STATE of Missouri, Respondent,

v.

Joseph LEE, Jr., Appellant.

Joseph LEE, Movant–Appellant,

v.

STATE of Missouri, Respondent.

No. 74592.

Supreme Court of Missouri,
En Banc.

Nov. 24, 1992.

Rehearing Overruled Dec. 18, 1992.

J. Bryan Allee, Susan L. Hogan, Kansas City, for appellant.

William L. Webster, Atty. Gen., John P. Pollard, Robert Alan Kelly, Asst. Attys. Gen., Jefferson City, for respondent.

COVINGTON, Judge.

The appellant, Joseph Lee, was tried by jury on charges of first degree murder, § 565.020, RSMo 1986, first degree robbery, § 569.020, RSMo 1986, and two counts of armed criminal action, § 571.015, RSMo 1986. The jury returned a verdict of guilty on the robbery charge and not guilty on the charges of murder and armed criminal action. The trial court sentenced appellant as a prior offender to thirty years. Appellant later sought postconviction relief in a *Rule 29.15* motion, which the motion court denied without evidentiary hearing. The Missouri Court of Appeals, Western District, affirmed the appeal of both judgments. This Court granted transfer to determine the effect of giving a verdict-directing instruction that states a method for the commission of the crime different from the method alleged in the information. The judgments are affirmed.

Appellant does not challenge the sufficiency of the evidence. On May 16, 1988, appellant met Ernest Johnson, Reginald Hunter, and Steven Davis at Thompson's Cafe on Troost Street in Kansas City at approximately 10:00 p.m. The four got into Davis's car and went driving through the downtown and midtown areas looking for someone to rob. They saw Richard Henges leave a bar on Main Street in the midtown area. Appellant, Johnson and Hunter left the car and followed Henges to a side street. Johnson grabbed Henges, then he and appellant began beating Henges. Henges fought back and Johnson ran back to the car. Appellant wrestled Henges to the ground. A shot was fired hitting Henges in the head and causing his death. Appellant and his companions returned to the Davis car. Appellant told Hunter he wanted Henges' gold necklace, then ran back to retrieve it. When appellant returned to the car, he had Henges' wallet and the money from the wallet in his hands. Appellant did not testify and presented no evidence at trial. The jury convicted appellant on the first degree robbery charge and acquitted him of murder and the two charges of armed criminal action.

I.

Appellant asserts that the trial court erred in submitting an instruction to the jury that contained a method for the commission of the crime not charged in the information. Appellant did not object to the submission of the instruction; therefore, the variance between the information and instruction is reviewed under plain error. *State v. Johnson,* 606 S.W.2d 655, 656–57 (Mo.1980). This Court will reverse only if the error results in manifest injustice or a miscarriage of justice. *Rule 29.-12(b).*

Section 569.020, RSMo 1986, provides that a person can commit robbery in the first degree by one of several different methods:

[W]hen he forcibly steals property and in the course thereof he, or another participant in the crime,

(1) Causes serious physical injury to any person; or

(2) Is armed with a deadly weapon....

*Id.*

Count III of the information charged appellant with robbery in the first degree in

that he "forcibly stole a billfold and gold necklace in the possession of Richard Henges, and in the course thereof, defendant, Joseph Lee, was armed with a deadly weapon." Instruction No. 13, the verdict director corresponding to the robbery charge, submitted that the jury should find appellant guilty only if it found beyond a reasonable doubt:

> First, that on or about May 16, 1988, in the County of Jackson, State of Missouri, the defendant took a billfold, which was property in the possession of Richard Henges, and
>
> Second, that defendant did so for the purpose of withholding it from the owner permanently, and
>
> Third, that defendant in doing so used physical force on or against Richard Henges for the purpose of overcoming resistance to the taking of the property, and
>
> Fourth, that in the course of taking the property, the defendant caused serious physical injury to Richard Henges,

There is no doubt that a variance exists between the information and the instruction. The question is the effect of the variance.

■ In *State v. White*, 431 S.W.2d 182 (Mo.1968), this Court held that a person could not be "charged with one offense, or with one form of an offense, and convicted of another." *Id.* at 186. A variance between the information and instruction is "fatal" because it prevents the defendant from receiving adequate notice of the crime with which he is charged. *Id.* at 185–86; *see also State v. Ballard*, 394 S.W.2d 336, 341–42 (Mo.1965). *White* was followed by *State v. Shepard*, 442 S.W.2d 58 (Mo. banc 1969), and *State v. Lusk*, 452 S.W.2d 219 (Mo.1970), in which this Court held that "when a crime may be committed by any of several methods, ... the method or methods submitted in the verdict directing instruction must be among those alleged in the information." *Shepard*, 442 S.W.2d at 60; *Lusk*, 452 S.W.2d at 223. The reason for the rule found in *White, Shepard,* and

*Lusk* is to foster and protect the primary purpose of the information, that of providing notice to the accused so that the accused may prepare an adequate defense against the charges brought. *See State v. White*, 431 S.W.2d at 185–86; *see also State v. Ballard*, 394 S.W.2d 336, 342 (Mo. 1965).[1]

A variance alone is not conclusive to the question of whether there is reversible error. In *State v. Crossman*, 464 S.W.2d 36 (Mo.1971), this Court considered prejudice in answering the question of whether the variance between the information and the instruction was "fatal." *Id.* at 42. In *Crossman* the basic offense charged and submitted was the same. *Crossman* held that a variance, to justify reversal, should be material and prejudicial to the rights of the accused. *Id.; Rules 23.11; 29.12; §§ 545.030 and 546.080, RSMo, 1986.* In determining prejudice the *Crossman* Court enunciated a standard that "unless the defendant can be said to have been prejudiced in that he would have been better able to defend had the information contained the phrase ..., he should not be entitled to relief on account of the variance." *Crossman,* 464 S.W.2d at 42.

■ Because the variance in this case affects whether the appellant received adequate notice from the information, the variance is material. *See State v. White*, 431 S.W.2d at 186. The question then becomes whether a material variance is always prejudicial. The answer must be no. A variance is prejudicial only if it affects the appellant's ability adequately to defend against the charges presented in the information and given to the jury in the instructions. *Crossman,* 464 S.W.2d at 42; *see also White*, 431 S.W.2d at 185–86; *Ballard,* 394 S.W.2d at 342.

Appellant contends he was not able to prepare adequately to defend against the charge submitted to the jury. He expected to defend against the allegation that he robbed Richard Henges and was armed with a deadly weapon. He expected the

---

1. The purposes of an information, in addition to providing notice to the defendant, are to provide protection against double jeopardy and to permit the trial court to decide whether sufficient facts are alleged to support conviction. *State v. Simone,* 416 S.W.2d 96, 98 (Mo.1967).

evidence, he contends, to be adduced through statements of codefendants that he had a gun. To inject the issue of serious physical injury, he alleges, "involved medical testimony and other facts separate from the issue of whether appellant was armed with a deadly weapon."

Appellant's contention squarely frames the pivotal question on this point, but is self-defeating under the evidence in the case. Crucial to the resolution of the question is the evidence adduced. Appellant does not challenge the sufficiency of the evidence to support the conviction either as charged in the information or as submitted in the instruction. The evidence shows that Richard Henges was shot while appellant forcibly stole property from Henges. The evidence further showed that appellant carried the gun on the night of the robbery. There is absolutely no evidence of serious physical injury to Henges other than the gunshot wound to Henges' head. The gunshot wound is the sole evidence by which the jury could have convicted appellant.

■ The sole evidence of serious physical injury is the very evidence that appellant contends on appeal that he expected to meet through the statements of his codefendants.[2] There is no prejudice here. Although appellant claims that "serious physical injury" involved medical testimony and other facts separate from the issue of whether appellant was armed with a deadly weapon, his claim is completely unfounded. The only medical testimony of serious physical injury is that of the gunshot wound. Although appellant also contends there were other facts separate from the issue of whether he was armed with a deadly weapon, he does not suggest what facts those might be. Appellant suffered no prejudice from the variance since his

defense at trial, if believed by the jury, was adequate to disprove the method submitted in the information and the method submitted in the instruction.[3] *Crossman*, 464 S.W.2d at 42, *see also State v. Martin*, 633 S.W.2d 80, 82 (Mo.1982).

■ In sum, instructing upon one form of an offense after the information charges a different form of the offense does not require reversal in every case. It is necessary to determine whether the variance between the information and instruction was material and whether the variance "prejudiced the substantial rights of the defendant" to prepare an adequate defense of the charges against him. *See Crossman*, 464 S.W.2d at 42; *Rule 23.11; Rule 29.12(a); see also Martin*, 633 S.W.2d at 82. In the present case, the variance did not prejudice appellant's ability adequately to defend against the charges brought. *See State v. Clark*, 782 S.W.2d 105, 108 (Mo.App.1989). Appellant was prepared and presented an adequate defense for the method alleged in the information and the method presented in the instruction to the jury. *See Martin*, 633 S.W.2d at 82.

Appellant asserts alternatively that he was prejudiced because the instruction on robbery circumvented the jury's verdicts of not guilty on the other counts. Count IV of the information charged appellant with armed criminal action in commission of a robbery. The jury returned a verdict of not guilty to the charge. Appellant speculates that if the instruction on the robbery count had contained the method of appellant's being armed with a deadly weapon, the jury would have found appellant not guilty on the robbery count. This Court refuses to engage in conjecture as to what verdict the jury may or may not have re-

---

2. Appellant's theory of defense, through cross-examination and closing argument, was that someone other than he carried the gun and shot Henges, and those individuals made deals to save themselves from prosecution.

3. The result might well have been different had there been any evidence of serious physical injury in addition to that caused by the gunshot. Appellant's defense that he did not shoot Henges would not have been adequate to defend against serious physical injury caused by anything other

than the gunshot. There was no evidence, however, that Henges suffered any physical injury, serious or otherwise, from the struggle. In testifying about the fatal wound by gunshot, which entered the head above the left eye, the medical examiner also stated that Henges suffered external injuries in the form of scrapes to his left eye, temple, and shoulder, a bruise to his left shoulder, and black eyes. Neither the medical testimony nor any other evidence, however, linked the external injuries suffered by Henges with the scuffle before the shooting.

turned had the instruction contained the same language as that found in the information. *See State v. Strickland,* 609 S.W.2d 392, 395 (Mo. banc 1980); *State v. Davis,* 738 S.W.2d 517, 519 (Mo.App.1987). Appellant presented an adequate defense against the charge, and sufficient evidence exists to support the conviction.

Appellant did not suffer prejudice from the variance between the information and the instruction and, therefore, did not suffer manifest injustice or a miscarriage of justice. The variance between the information and the instruction is not plain error and does not require reversal of appellant's conviction and sentence.

### II.

Appellant contends that the trial court committed reversible error in overruling appellant's objection of "inferential" hearsay to the testimony of Detective Rita Olson–Stawicki. Appellant contends that Detective Olson–Stawicki's testimony that she questioned codefendant Davis and then interrogated appellant, coupled with the fact that appellant was arrested the same day he was interrogated, created an inference that Davis gave the detective appellant's name, and that appellant then made an incriminating statement to Olson–Stawicki.

Review is under plain error. *Rule 29.-12(b).* Appellant's motion for new trial raises grounds for error not raised by appellant during trial. To preserve a claim of error for appellate review, counsel must object at the time the evidence is sought to be introduced, stating the grounds. The same objection must be set out in the motion for new trial and carried forward in the appeal brief. *Rule 29.11(d); State v. Hernandez,* 325 S.W.2d 494, 496 (Mo.1959).

Detective Olson–Stawicki testified in pertinent part as follows:

Q. And tell me who those individuals were that you personally interviewed.

A. Steven Davis.

Q. And where did that interview take place?

A. Police headquarters, 1125 Locust, 2nd Floor, in the homicide division.

Q. And did you have anything else to do with the investigation of that homicide

following your interview with Steven Davis?

A. I continued to investigate the homicide.

Q. And did you conduct any other interviews in connection with your investigation of the homicide of Richard Henges?

A. Yes, sir. I did interrogate a gentleman by the name of—

MS SCHENKENBERG: Your Honor, I'm going to raise the same objection ["inferential" hearsay] and ask for a continuing objection to this line of testimony.

THE COURT: It may continue, and it's overruled.

MS SCHENKENBERG: Thank you.

Q. (Mr. Humphrey) Who'd you next talk to?

A. I also interrogated a gentleman by the name of Joseph Lee, Junior.

Appellant relies on *State v. Valentine,* 587 S.W.2d 859 (Mo. banc 1979), in which this Court recognized that "[t]estimony which, by clear inference, showed that an alleged accomplice had implicated the defendant in the offense involved, [is] just as much hearsay and objectionable as the implicating statement itself would have been...." *Id.* at 861, (*quoting State v. Edwards,* 435 S.W.2d 1, 6 (Mo.1968)).

*Valentine* is distinguishable. In *Valentine* a police officer testified that he had questioned Valentine's codefendant about a robbery. *Id.* at 860. The state then asked the officer specifically what next occurred in the investigation. The officer replied that they issued an arrest order for Valentine. *Id.* The period of time from the commission of the crime to the arrest of the defendant was slight—approximately two hours. *Id.* at 861. The clear inference from the line of questioning in *Valentine* was that the police almost immediately arrested Valentine based upon their questioning of the codefendant.

Unlike the testimony in *Valentine,* the detective's testimony in the present case would not allow the jury clearly to infer that Davis told the detective something that caused her to interrogate appellant,

much less arrest him. Furthermore, the testimony gives no indication of the timing of either appellant's interrogation or arrest. It would have been as reasonable for the jury to infer that the interview with Davis did not implicate appellant as to infer that it did. *See State v. Sykes*, 611 S.W.2d 278, 282 (Mo.App.1980). There was no statement, direct or inferred, by an out-of-court declarant; therefore, there was no hearsay testimony. There is no error, plain or otherwise.

### III.

■ Appellant contends that the trial court erred in overruling his objection to the state's closing argument that the evidence was "uncontroverted," and that "no other evidence" or "no other testimony" was presented to refute appellant's guilt. Appellant contends that the state's reference to the "uncontroverted" nature of the evidence implied that appellant's failure to testify was substantive evidence of his guilt, thus violating his right against self-incrimination under the Fifth Amendment of the United States Constitution and the Missouri Constitution, art. I, § 19.

During closing argument the prosecutor stated to the jury, "[e]ach of the instructions requires that whatever you find, that finding must be based upon the evidence. The only evidence submitted in this case is the state's evidence, and that evidence is uncontroverted." Appellant's attorney objected to the prosecutor's statement, alleging that the prosecutor was commenting on appellant's refusal to testify on his behalf. The court overruled the objection. On appeal appellant alleges five additional references by the prosecutor to "uncontroverted" or "uncontradicted" evidence submitted by the state. The claims raised for the first time on appeal are reviewed under plain error. *Rule 29.11(d)*.

■ The trial court has wide discretion in controlling the scope of closing argument. The trial court is able to observe the contested incidents and to determine their prejudicial effect, if any, on the jury. *State v. Robinson*, 641 S.W.2d 423, 426 (Mo. banc 1982). When the prosecutor has allegedly alluded to a defendant's failure to testify, a reviewing court will disturb the

trial court's decision only where the references are direct and certain. *Id.* "Merely stating that the evidence is 'uncontradicted' or that a defendant has failed to offer evidence is not a direct and certain reference." *Id.* (citations omitted). The prosecutor's statements in the present case that the evidence is "uncontroverted" were merely comments on the relative weakness of appellant's case, not direct and certain references to appellant's failure to testify. *State v. Hunter*, 750 S.W.2d 134, 137 (Mo. App.1988). The trial judge did not abuse his discretion in overruling appellant's objection, nor are the statements by the prosecutor of which appellant complains on appeal plain error.

### IV.

Appellant contends the trial court erred in overruling his objection to the state's recalling Detective Ricky Pilgrim to testify during its case-in-chief and his subsequent testimony, because the testimony constituted bolstering and was repetitive of testimony given earlier. On direct examination, Detective Pilgrim testified that during Reginald Hunter's videotaped statement to the police implicating appellant, Detective Pilgrim did not make any threats or promises to Hunter. Detective Pilgrim did not suggest to Hunter whom he should name in connection with the homicide. On cross-examination, Detective Pilgrim stated that he conducted a pre-interview of Hunter prior to his video statement, and that during the pre-interview he advised Hunter of his rights. Detective Pilgrim testified that he did not inform Hunter that the police believed appellant shot Henges, nor did he tell Hunter the amount of time he could spend in jail if found guilty of murder.

Hunter's testimony on cross-examination refuted Detective Pilgrim's testimony. Hunter testified that prior to his videotaped statement the police told him that the men with appellant had told the police that appellant was the "shooter." Hunter stated that the police told him he faced a life sentence without parole on each of the four counts filed against him. Because of this pressure, Hunter claimed, his statement

was "worked out" before he went to be videotaped.

Immediately after the Hunter testimony, and over appellant's objection, the state recalled Detective Pilgrim. Detective Pilgrim testified that he made no promises or threats to Hunter, did not discuss with Hunter the crimes subsequently charged, and did not discuss with Hunter possible punishment for the crimes.

■■■ The testimony of Detective Pilgrim upon his being recalled does not constitute improper bolstering. The recall of witnesses is a matter within the discretion of the trial court. *See State v. Byrd,* 676 S.W.2d 494, 504 (Mo. banc 1984), *cert. denied,* 469 U.S. 1230, 105 S.Ct. 1233, 84 L.Ed.2d 370 (1985); *see also Hollingsworth v. Quick,* 770 S.W.2d 291, 296 (Mo.App.1989). The state recalled Detective Pilgrim to refute an allegation raised by appellant's cross-examination of Detective Pilgrim and of Hunter.

In sole support of his argument, appellant asks this Court to extend the holding of *State v. Seever,* 733 S.W.2d 438 (Mo. banc 1987). In *Seever* the prosecutor presented a child abuse victim's testimony in two distinct forms; one form as live, in-court testimony and the other form as videotaped, out-of-court testimony. *Id.* at 439–440. The *Seever* court held that "when a witness testifies from the stand, the use of duplicating and corroborative extrajudicial statements is substantially restricted.... The party who can present the same testimony in multiple forms may obtain an undue advantage." *Id.* at 441. In the present case, no extrajudicial statements of Detective Pilgrim were admitted into evidence; Pilgrim's testimony was presented each time as live, in-court testimony, thereby giving appellant the opportunity to cross-examine. There is no reason to extend *Seever.* The trial court did not abuse its discretion.

## V.

Codefendant Davis received a twenty-three year sentence on the convictions of murder, robbery and armed criminal action. Codefendants Hunter and Jackson, both of whom testified for the state, received sentences of five and six years, respectively.

In his *Rule 29.15* motion, appellant contended that the trial court erred in sentencing him to thirty years in imprisonment. Before this Court, appellant asserts that his sentence is cruel and unusual because it is disproportionate to the offense, thus violating the Eighth and Fourteenth Amendments of the United States Constitution and art. I, § 21, of the Missouri Constitution.

Citing *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), appellant, a prior offender, contends that a comparison of his sentence with that of sentences given to his codefendants reveals that his sentence is disproportionate. *Solem* articulated a three-part objective test to determine proportionality of a sentence in accordance with the Eighth Amendment: (1) An examination of the gravity of the offense and the harshness of the penalty; (2) a comparison of the sentences imposed on other criminals in the same jurisdiction; and (3) a comparison of the sentences imposed for commission of the same crime in other jurisdictions. *Id.* at 290–92, 103 S.Ct. at 3009–10.

■■■ Appellant ignores the fact that the United States Supreme Court in *Harmelin v. Michigan,* —— U.S. ——, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), altered the three part *Solem* test. *Harmelin* makes clear that comparison to sentences given to other defendants for the same or a similar crime is irrelevant except when the court finds the sentence in question grossly disproportionate. *See Harmelin,* —— U.S. at ——, 111 S.Ct. at 2707; *see also State v. Carlton,* 733 S.W.2d 23, 28 (Mo.App.1987).

The penalty for the commission of robbery in the first degree is "a term of years not less than ten years and not to exceed thirty years, or life imprisonment." § 558.011.1(1), RSMo 1986. A life sentence given for robbery in the first degree is not grossly disproportionate. *State v. Carlton,* 733 S.W.2d at 28. Considering the gravity of appellant's offense and the harshness of the penalty, *Solem,* 463 U.S. at 290, 103 S.Ct. at 3009, appellant's sentence is not disproportionate, much less grossly disproportionate. The *Rule 29.15* court was not

clearly erroneous in finding that the trial court properly sentenced appellant, and appellant has failed to show that his sentence is in violation of the United States and the Missouri Constitutions.

## VI.

The judgments are affirmed.

ROBERTSON, C.J., and HOLSTEIN, BENTON, PRICE and LIMBAUGH, JJ., concur.

THOMAS, J., concurs in part and dissents in part in separate opinion filed.

THOMAS, Judge, concurring in part and dissenting in part.

I respectfully dissent from the conclusion reached by the majority in Part I of the opinion of the Court. There was a variance between the crime charged in the information (first degree robbery while armed with a deadly weapon) and the crime submitted in the instruction (first degree robbery where, in the course of taking the property, the defendant caused serious physical injury to the victim). The majority concludes that this variance was not prejudicial to the rights of the accused and therefore did not constitute plain error. I agree with the majority on a series of its conclusions with respect to this issue as follows:

1. A defendant cannot be charged with one form of an offense and convicted of another. *State v. White*, 431 S.W.2d 182 (Mo.1968).

2. A variance between information and instruction is "fatal" because it prevents the defendant from receiving adequate notice of the crime charged. *State v. Lusk*, 452 S.W.2d 219 (Mo.1970).

3. The reason for the rule prohibiting such a variance is to provide notice to the defendant so that the defendant may prepare an adequate defense against the charges brought. *White*, 431 S.W.2d at 185–186.

4. Variance, alone, is not conclusive to the question of whether there is reversible error. To justify reversal, the variance must be material and prejudicial to the rights of the defendant.

5. The variance in this case was material because it affects whether the defendant received adequate notice from the information.

6. A material variance is not always prejudicial. A variance is prejudicial only if it affects the defendant's ability adequately to defend against the charges presented in the information and given to the jury in the instruction.

The majority opinion then concludes that the variance from the charge in the information (defendant was armed with a deadly weapon during the commission of the crime) to the alternative statutory grounds submitted in the instruction (in the course of taking the property, the defendant caused serious physical injury to Richard Henges) was not prejudicial because:

> There is absolutely no evidence of serious physical injury to Henges other than the gunshot wound to Henges' head. The gunshot wound is the sole evidence by which the jury could have convicted appellant.

Op. at 651. Therefore, the majority finds that both the information and the instruction submitted essentially the same issue (the possession and use of a gun). As a result, the majority holds that the defendant's ability to defend the charge was not affected by the variance.

I disagree with this conclusion for two reasons.

First, I disagree with the majority's conclusion that there was no evidence to support a finding of serious physical injury other than the gunshot wound. Dr. Bonita Peterson, M.D., a pathologist working as the Jackson County Medical Examiner, performed an autopsy on the body of Richard Henges. She testified that from an external examination of the body she observed, in addition to the gunshot wound, injuries of "a bruise and a skin scrape of the left shoulder, there was some skin scraping around the left eye and the left temple area, there were black eyes...." Ernest Johnson, who admitted he was one of the co-participants in the robbery, testified he grabbed Henges from the rear and held him "by the arms from the back." He

further testified that Reginald Hunter and Joseph Lee, the appellant, then started hitting Henges. Johnson said he then let go of Henges and went back to the car. According to Johnson's testimony, Lee and Henges continued fighting after Johnson left. Reginald Hunter, the other State's witness who had participated in the crime,[1] testified that he grabbed Henges and wrestled him to the ground. Thus, the majority is incorrect in the basic premise for its conclusion that there was no evidence of serious physical injury other than the gunshot wound. Although an issue may be raised as to whether the non-gunshot injuries described constitute "serious" physical injury, I believe this is a question for the jury and, in any event, that the jury may have concluded this was its issue to decide.

Second, even if the majority were correct in concluding there was inadequate evidence of other serious physical injury, there certainly is no guarantee, or even any indication, that this jury necessarily limited its findings to matters supported by the evidence. The instructions, if proper, perform the function of limiting the jury's findings to those conclusions which are supported by the evidence. An instruction which is so broad as to allow the jury to consider findings which are not supported by the evidence, as well as those that are, is erroneous as a roving commission. *Paisley v. Kansas City Public Service Co.,* 351 Mo. 468, 173 S.W.2d 33, 38 (Mo. banc 1943); *Gillioz v. State Highway Comm'n,* 348 Mo. 211, 153 S.W.2d 18, 26 (Mo. banc 1941); *Powers v. Ellfeldt,* 768 S.W.2d 142, 146–47 (Mo.App.1989). Once the State decided to change "armed with a deadly weapon," as charged in the information, to submit "caused serious injury to Richard Henges," it became necessary, if a fatal variance is to be avoided, to restrict the jury's consideration in finding serious physical injury to the physical injury caused by the gunshot wound. This could have been done very simply by modifying the fourth paragraph of MAI–CR 323.02 to read as follows:

Fourth, that in the course of taking the property, the defendant caused serious physical injury by inflicting a gunshot wound to Richard Henges.

The failure to modify this instruction to avoid this roving commission results in a fatal variance between the crime charged in Count III of the indictment and the crime submitted in this instruction. The majority's effort to resolve the variance problem by assuming that the jury limited its findings to injury by gunshot is doomed to failure because there was evidence of other injury and also because the instruction failed to limit the jury's consideration to personal injuries caused by the gunshot wound.

Having expressed my disagreement with the majority's reasons for concluding the variance was not prejudicial, I conclude that the variance was prejudicial. The majority denounces speculation about what the jury might have done had they been instructed differently. Nevertheless, the majority engages in similar conjecture in determining what "serious physical injury" the jury found to have occurred. In so speculating, the majority reasons contrary to the only logical conclusion available: that the jury based its verdict of guilty upon serious personal injury other than the gunshot wound. The jury found Lee guilty under Count III (first degree robbery based on infliction of serious personal injury) but not guilty under Count IV (armed criminal action based on the first degree robbery submitted in Count III as the underlying charge). The only way to reconcile these verdicts is to conclude that the jury believed that the defendant participated in the robbery but did not believe, or at least had a reasonable doubt, that the defendant had or used the gun in committing the robbery. To find Lee guilty of Count IV, the jury had only to find that Lee committed the offense of robbery charged in Count III and that he used a deadly weapon (the gun) in the robbery. Given the guilty verdict on Count III, the jury's

---

1. Neither the appellant, Joseph Lee, Jr., nor Stephen Davis, the fourth participant in the robbery under the version related by Johnson and Hunter, testified at the trial. Under the version related by Johnson and Hunter, Davis drove the car and stayed in the car during the robbery and altercation.

not-guilty finding on Count IV must, by necessity, turn on the jury's finding concerning the defendant's use of a gun. Any other conclusion as to the jury's findings presupposes an inconsistent verdict between Count III and Count IV. Moreover, a jury finding that defendant was present and participated in the robbery but did not have or use the gun is consistent with the jury's finding of not guilty on Count I (murder in the second degree) and on Count II (armed criminal action with the murder count as the underlying crime). Although the evidence may have supported a submission on all of the counts against Lee on the theory that he was a co-participant, the State neither charged nor submitted any of the counts on this theory. Thus, the State must rise or fall on its ability to carry the burden of proof that Lee committed each act, which constitutes a necessary element of the crimes charged.

Lee's defense consisted primarily of contending that the State's witnesses (Johnson and Hunter), who by their own testimony participated in the robbery, were unworthy of belief. The defense pointed out that Johnson and Hunter made a deal with the prosecutor for short sentences on a single count of robbery in exchange for their testimony implicating Lee as the trigger man. Hunter testified that the prosecutor agreed to recommend a sentence of six years on his plea of guilty to the robbery charge and agreed to dismiss the other charges. This agreement was contingent upon Hunter testifying at trial consistent with his prior statement that Lee had and used the gun. The prosecutor was to be the final judge of whether Hunter gave consistent, truthful testimony for purposes of this agreement. Johnson entered into a similar arrangement whereby he pled guilty to robbery, and the prosecutor agreed to recommend a sentence of five years. At the time of trial, neither Johnson nor Hunter had been sentenced. In closing argument, the defense argued that Johnson and Hunter, by their testimony, "took the gun out of their own hands and put it in Joseph Lee's.... They got the deal from the prosecutor in return for taking the gun out of their own hands and putting it someplace else." Later in the argument, defense counsel referred to Johnson and Hunter as "[t]wo admitted dealmakers who are trying to take the gun out of their hands so that they didn't face a murder charge."

The question comes down to whether the variance between the information and the instruction was prejudicial. This variance rendered Lee's defense that he did not have or use the gun a nullity against the robbery charge. This variance required the defense to convince the jury that it should disbelieve Johnson and Hunter, not only as to their testimony that Lee was the trigger man, but also as to their testimony that Lee participated in the robbery. This constitutes prejudice.

Moreover, if the jury reached consistent verdicts, it believed the testimony of Johnson and Hunter that Lee participated in the robbery. The jury, however, was unwilling to believe Johnson and Hunter's testimony that Lee was the trigger man. This leads to the inevitable conclusion that the jury made its finding of "serious physical injury" under Count III based upon the non-gunshot injuries. This finding is a material variance from the underlying element of the robbery as charged in the information which alleged that Lee was armed with a deadly weapon during the robbery.

All indications are that the jury seized upon this variance as the basis for its finding of guilty on the first degree robbery charge while returning not-guilty verdicts on the other three counts. There is a strong probability that this variance was the difference between a not-guilty verdict on the robbery count, under which Lee would have walked out of the courtroom a free man, as opposed to a verdict of guilty, under which Lee faces a thirty-year prison sentence. This constitutes the ultimate prejudice. By this variance, the State was allowed to change the theory of Count III. The information required the State to put the gun into the hands of Lee. The instruction allowed the State to meet its burden of proof on the robbery charge by showing that Lee participated in the robbery without regard to whether he had and used the gun. This variance was material and prejudicial and resulted in manifest

injustice. As a result, the variance is reviewable for plain error under Rule 29.-12(B).

I concur on the points covered in Parts II, III, IV and V of the majority opinion; I dissent from the majority's holding in Part I. I would reverse the conviction of first degree robbery and remand for a new trial on that count.