

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | WD83910 |
| | ) | |
| COTY JACK BORST, | ) | FILED: February 1, 2022 |
| Appellant. | ) | |

**Appeal from the Circuit Court of Platte County
The Honorable James W. Van Amburg, Judge**

**Before Special Division:  Alok Ahuja, P.J., and
Mark D. Pfeiffer and Thomas N. Chapman, JJ.**

Following a jury trial in the Circuit Court of Platte County, Coty Borst was convicted of second-degree murder and armed criminal action.  Borst appeals.  He argues that there was a fatal variance between the murder offense for which he was indicted, and the offense of which he was convicted.  We reverse and remand for a new trial.

## Factual Background

On September 18, 2018, Coty Borst was indicted in the circuit court on three counts:  (1) murder in the second degree, in violation of § 565.021.1;[1] (2) armed criminal action in violation of § 571.015, for committing the murder with a firearm; and (3) assault on a police animal, in violation of § 575.353.  The murder charge was based on the allegation that Borst "knowingly caused the death of Jacob Stowers by

---

[1]        Unless otherwise noted, statutory citations refer to the 2016 edition of the Revised Statutes of Missouri, updated by the 2017 Supplement.

shooting him." The jury acquitted Borst of the third count, and we do not discuss it further.

The following evidence was adduced at trial.

On June 21, 2018, Borst went with Jacob Stowers and Stowers' girlfriend, Madison Sitzer, to help Sitzer pack up her house after she had been evicted. Both Borst and Sitzer had been drinking, though Borst was not "noticeably intoxicated." On the way to Sitzer's house, they stopped at a gas station to purchase liquor.

Once at Sitzer's house, Sitzer became upset and decided she wanted to be alone with Stowers. Sitzer yelled at Borst to leave, and Borst began arguing with her. Stowers attempted to calm the two down. Eventually, Borst left Sitzer's house.

Sitzer and Stowers were sitting on Sitzer's bed talking when Borst returned to the house and entered the bedroom. Sitzer and Stowers stood up, facing one another, when Sitzer heard the gun go off and then saw Stowers "hit the ground." Sitzer did not remember seeing a gun. Borst left the house again, and Sitzer ran to a neighbor's home to call 911.

When the police arrived at Sitzer's home, Stowers was on the ground, conscious but injured. Stowers was transported to the hospital, where he died. The cause of death was a single gunshot wound to Stower's left back, which struck his aorta and caused "abundant internal hemorrhage."

Detective Nancy Penrod interviewed Borst four or five hours after the shooting. After Borst waived his *Miranda*[2] rights, he "repeatedly" told Detective Penrod that he had acted in self-defense. Borst explained that Stowers had said something like "we have guns all over the place," and then charged at Borst a few minutes later. Borst also stated multiple times that Stowers may have had a gun

---

[2]      *Miranda v. Arizona*, 384 U.S. 436 (1966).

and may have shot at Borst first. Borst told Detective Penrod that he thought he had shot Stowers in the leg, and thought, at worst, that Stowers' leg was broken. When the police told Borst that Stowers had died from the gunshot wound, Detective Penrod testified that Borst was "[s]hocked and surprised." A video recording of Borst's police interview was played for the jury.

Consistent with the indictment, the State advised venirepersons during voir dire that Borst was accused of second-degree murder for "knowingly caus[ing] the death of Jacob Stowers by shooting him."

Borst's attorney's opening statement emphasized two lines of defense to the murder charge: that Borst had acted in self-defense, and that he did not knowingly cause Stowers' death as charged in the indictment. Thus, counsel advised the jury:

> The evidence will show in this alcohol infused world that [Borst] thought [Stowers] was getting a gun and he takes his weapon out and defends his person.
>
> The evidence will show that [Stowers] charged at [Borst] and one shot was fired. The evidence will show though that there was not a kill-shot. It was not in a kill-zone.
>
> The evidence will show that [Borst] gave a statement to police and he repeatedly said that he believed he shot [Stowers] in the leg. He repeatedly said that. "I wasn't going to kill him. I didn't want to kill him. I shot him in the leg." The evidence will show that these parties were just feet away. The evidence will definitely show that had a kill-shot been intended, it could have happened. The evidence will show [Borst] thought he shot him in the leg and it turned out to be in the lower back of the left side; not in the chest, not in the head. [Borst] believed, according to the evidence that you will see, that he thought the worst that had happened to his friend, . . . [was] that he was shot in the leg, and he had, at worst, a broken leg.
>
> The evidence will show that he was shocked to learn that Jacob had died. The evidence will show that [Borst] did not inflict this injury for any other reason other than what he thought was self-defense and for other – no other reason than to protect himself. The evidence will show that he did not believe that that injury would cause death.

3

Borst testified at trial that he had acted in self-defense. He testified Stowers and Sitzer made a crude joke at his expense, and that Borst complained that they were "constantly hating on [him.]" An argument ensued. Stowers eventually stood up from where he was sitting with Sitzer and got within two to three feet of Borst and made a statement about fighting him. Borst testified that he responded that he did not want to fight Stowers but would defend himself if necessary. Borst testified that he told Stowers that he had a gun, and that Stowers responded, "we've got guns all over the place." Stowers then walked away, saying "let me go get one." Borst testified the tension was "very high" at that point, and that he felt threatened.

Borst testified that, because he believed Stowers had left the room to get a gun and might "actually hurt" him, Borst cocked his gun. Borst then came around the corner with his gun raised at Stowers and Sitzer. Stowers turned to look at Borst, and "he had kind of a look as if he was about to dash," though he did not actually charge at Borst. Borst then fired at Stowers' leg.

Borst testified that "I shot Jacob in self-defense because I declined to fight him and more than once and then he . . . said he was going to get a gun whenever I declined to fight him. And that doesn't leave me much room to do anything. . . . I shot Jacob to protect myself." Borst testified that he ran out of the house after shooting Stowers because he was scared that Stowers or Sitzer might shoot him.

Following Borst's direct examination, the circuit court held an instruction conference. The second paragraph of the State's proposed verdict director for the murder charge, Instruction Number 9, required that the jury find that "it was [Borst's] purpose to cause serious physical injury to Jacob Stowers." Borst objected to this language, and asked that the court instead instruct the jury that it must find that Borst "knew or was aware that his conduct was practically certain to cause the death of Jacob Stowers," consistent with the indictment. The circuit court overruled Borst's objection and submitted the instruction as proposed by the State.

4

Following the instruction conference, Borst concluded his testimony, and the defense rested.

In its closing argument, the State argued that Borst had effectively conceded the second element of second-degree murder in his testimony – namely, that he had shot Stowers with the purpose of causing serious physical injury. Thus, reviewing the verdict director with the jury, the State argued:

> Second, that it was the defendant's purpose to cause serious physical injury. Remember when I asked the defendant, was it your purpose to cause serious physical injury? Yes. Was it your purpose to shoot Jacob? Yes.
>
> And he knew that even if shooting in the leg, was serious physical injury, because I asked him. I said, "Even if you shoot him in the leg, that's serious physical injury." Yes. His purpose was to cause serious physical injury.
>
> It doesn't matter if he tried to aim for the leg or not. He intended to cause serious physical injury and he did. He told you right there a few minutes ago.
>
> Remember, he's a very thorough person. A shot to the leg is serious physical injury. He confessed to this element on the stand. He made your job easy. He told you exactly what he was doing.

The jury convicted Borst of murder in the second degree and armed criminal action. Borst was sentenced to terms of imprisonment of 30 years for murder, and 15 years for armed criminal action, with the sentences ordered to run consecutively.

Borst appeals.

**Discussion**

In his sole Point on appeal, Borst argues that his rights to due process and to a fair trial were violated when he was indicted for committing murder by knowingly causing Stowers' death, but the jury was instructed that it could convict him if it found that he acted with the purpose of causing Stowers serious physical injury.

**I.**

The State argues that Borst's instructional-error claim was not preserved in the circuit court, and that Borst is accordingly entitled only to plain-error review. We disagree. To preserve a claim of instructional error, counsel must make a "specific objection[ ]," "stating distinctly the matter objected to and the grounds of the objection." Rule 28.03. The Missouri Supreme Court has explained that

> "[o]ur rules for preservation of error for review are applied, not to enable the court to avoid the task of review, nor to make preservation of error difficult for the appellant, but, to enable the court – the trial court first, then the appellate court – to define the precise claim made by the defendant."

*State v. Amick*, 462 S.W.3d 413, 415 (Mo. 2015) (quoting *State v. Pointer*, 887 S.W.2d 652, 654 (Mo. App. W.D. 1994)).

> Thus, where a defendant's objection "plainly and unequivocally" inform[s] the trial court of the defendant's position that a particular decision or action of the court was error for a particular reason[,] . . . the defendant need not cite in his objection or motion for a new trial the specific rule or statute at issue.

*State v. Johnson*, 513 S.W.3d 360, 364 n.2 (Mo. App. E.D. 2016) (citing *Amick*, 462 S.W.3d at 415).

In *Amick* the Supreme Court held that a defendant had preserved his claim that the substitution of an alternate juror during the course of the jury's deliberations violated § 494.485, even though defense counsel did not cite the statute in his objection at trial. The Court explained that "trial judges are presumed to know the law and to apply it in making their decisions. This presumption, in addition to Mr. Amick's timely and specific objection to the precise issue of the propriety of substituting alternate Juror 14 for Juror 12 after the jury had commenced deliberations, is sufficient to preserve the issue for appeal." 462 S.W.3d at 415 (citations omitted). Similarly, the Eastern District held in *Johnson* that the defendant preserved his claim that the State had failed to timely disclose

6

discovery materials, even though the defendant's trial objection failed to cite the rule requiring timely disclosure. 513 S.W.3d at 364 n.2; *see also, e.g., State v. Irwin*, 592 S.W.3d 96, 106-07 (Mo. App. E.D. 2019) (defendant preserved his argument that the reading of an investigator's prior testimony at trial violated the Confrontation Clause, where counsel objected that the investigator was available to testify by videoconference, and stated that "I think it's important for the jury to see how she testifies"); *State v. Voss*, 488 S.W.3d 97, 116 n.14 (Mo. App. E.D. 2016) (hearsay objection to penalty-phase testimony concerning other acts of misconduct was sufficient to preserve the defendant's claim that the State failed to prove the prior misconduct by a preponderance of the evidence).

In this case, Borst's counsel specifically objected to the language of the second paragraph of the verdict-directing instruction for second-degree murder, which hypothesized the state-of-mind element. Counsel advised the court that the instruction ultimately given changed the mental state from a requirement that Borst knowingly caused Stowers' death, to merely requiring that Borst have acted with the purpose of causing Stowers serious physical injury. While Borst may not have specifically invoked the variance doctrine by name, he advised the trial court: that the State had originally proposed to submit the case on the basis that Borst "knew or was aware that his conduct was practically certain to cause the death of Jacob Stowers"; that the State was now "asking for a different instruction," under which the jury would only be required to find "that the Defendant purposely caused serious physical injury to Jacob Stowers"; and that Borst "would ask for the original Instruction submitted by the State be given rather than the one that is now being proposed," because the original instruction "would be the proper instruction on that second element." Borst's trial objection was sufficient to advise the circuit court, and the State, of the error he now challenges, and the basis for his claim of error.

7

Borst reasserted the same objection in his motion for a new trial. The claim was adequately preserved for our review.

## II.

## A.

It is a fundamental principle of due process that a criminal defendant must be given notice of the charges against him, so that he can have a meaningful opportunity to prepare a defense.

> No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.

*Cole v. Arkansas,* 333 U.S. 196, 201 (1948) (citation omitted). "The purpose of an indictment is to provide due process notice to the accused of the charges pending against him so that he may prepare an adequate defense." *State v. Gheen*, 41 S.W.3d 598, 602 (Mo. App. W.D. 2001) (citation omitted).

Consistent with due-process notice principles, the Missouri Supreme Court has held that "[o]ne cannot be charged with one offense, or with one form of an offense, and convicted of another." *State v. White*, 431 S.W.2d 182, 186 (Mo. 1968); *accord State v. Lee*, 841 S.W.2d 648, 650 (Mo. 1992). "[W]hen a crime may be committed by any of several methods, . . . the method or methods submitted in the verdict directing instruction must be among those alleged in the information." *Lee*, 841 S.W.2d at 650 (internal quotation marks omitted; citing *State v. Shepard*, 442 S.W.2d 58, 60 (Mo. 1969), and *State v. Lusk*, 452 S.W.2d 219, 223 (Mo. 1970)). The purpose of these rules is "to foster and protect the primary purpose of the information, that of providing notice to the accused so that the accused may prepare an adequate defense against the charges brought." *Id.*

8

To constitute reversible error, a variance between a charging instrument and a verdict-directing instruction must be "fatal," or, in other words, both "material" and "prejudicial." *State v. Tillman*, 289 S.W.3d 282, 292 (Mo. App. W.D. 2009). "'Variances are material when they affect whether the accused received adequate notice,'" or whether "the information reasonably inform[ed] defendant of the evidence which will be presented at trial." *State v. Glass*, 136 S.W.3d 496, 520 (Mo. 2004) (quoting *State v. Whitfield*, 939 S.W.2d 361, 366 (Mo. 1997)); *State v. Jones*, 930 S.W.2d 453, 455 (Mo. App. E.D. 1996) (citation omitted). "[V]ariances are prejudicial when they affect the defendant's ability to defend against the charges." *Glass*, 136 S.W.3d at 520 (citation omitted). If it can be said that the defendant "would have been better able to defend had the information contained the [same] phrase" as the verdict director, then the defendant is entitled to relief on account of a variance. *Tillman*, 289 S.W.3d at 292 (citation omitted). A material variance which "mislead[s] the defendant" in preparing his defense is fatal. *White*, 431 S.W.2d at 186.

## B.

A variance occurred in this case, because Borst was charged with one form or method of committing second-degree murder, but the jury convicted him of committing a different form or method. There are two types of murder in the second degree: "conventional" and felony murder. § 565.021.1. "Conventional" second-degree murder can be committed in two distinct ways: either the defendant "[k]nowingly causes the death of another person"; or, "with the purpose of causing serious physical injury to another person, [the defendant] causes the death of another person." § 565.021.1(1). While both forms of conventional second-degree murder require the defendant to cause the death of another person, they require that the defendant have acted for different reasons. The first form of conventional second-degree murder requires the defendant to be "aware that his . . . conduct is

9

practically certain to cause" the death of another person. *See* § 556.061(31)(b) (definingly "knowingly"). Under the second alternative, it must be the defendant's "conscious object" to cause serious physical injury. *See* § 556.061(41) (defining "purposely").

The alternative states of mind which can support a conviction for conventional second-degree murder constitute fundamentally different forms of, or methods of committing, the underlying offense. If one form or method is charged, a different form or method cannot be submitted to the jury. The Missouri Supreme Court held that a similar variance in state-of-mind requirements required reversal in *State v. Shepard*, 442 S.W.2d 58 (Mo. 1969). In *Shepard*, the defendant was convicted of attempted second-degree burglary. *Id.* at 59. The defendant was charged by information with unlawfully entering a service station "with intent to steal." *Id.* The verdict-directing instruction allowed the jury to convict the defendant, however, if it found that he unlawfully entered "with intent then and there to commit some felony, or any stealing therein." *Id.* The Supreme Court held that the instruction's expansion of the culpable state of mind, to include entry with an intent "to commit some felony," constituted a fatal variance which required the reversal of the defendant's conviction.

> The offense of burglary, second degree, insofar as the essential element of intent is concerned, may be committed in two ways; that is, by an intent to steal or by an intent to commit any other crime in the building broken and entered. It has long been the rule that when a crime may be committed by any of several methods, the information must charge one or more of the methods, and the method or methods submitted in the verdict directing instruction must be among those alleged in the information . . . . In this case, the submission clearly authorized a finding of guilty if the jury found an intent to commit 'some felony' other than stealing or an intent to steal. . . . [T]here was no charge in the information of an intent to commit 'some felony' other than to steal . . . . Therefore, the jury was authorized to find defendant guilty on a submission not alleged in the information . . . .

*Id.* at 60 (citations omitted).

10

Similarly, in *State v. Holmsley*, 554 S.W.3d 406 (Mo. 2018), the Missouri Supreme Court reversed a defendant's convictions of several sexual offenses, where the State suggested to the jury in closing argument that the defendant may have acted for the purpose of sexual gratification, even though he was charged with committing the relevant acts for the purpose of terrorizing the victim. Although the circuit court sustained the defendant's objection to the improper argument, it refused to give the jury a curative instruction. The Supreme Court held that in these circumstances reversal was required, because "[b]y failing to give a curative instruction, the trial court . . . permitted the jury to convict Mr. Holmsley on a basis for which he was not charged with committing the offenses." *Id.* at 414; *see also, e.g.*, *State v. Cruz-Basurto*, 581 S.W.3d 51, 56 (Mo. App. W.D. 2019) (although finding no prejudicial error, noting a variance between the information, which charged the defendant with engaging in sexual acts "for the purpose of arousing or gratifying the sexual desire of *the defendant*," and the verdict director, which stated that defendant could be convicted if he acted "for the purpose of arousing or gratifying the sexual desire of *any person*" (emphasis added)).

A variance existed in this case between the manner in which Borst was charged, and the basis on which he was convicted. The grand jury indicted Borst of second-degree murder based on the allegation that he "knowingly caused the death of Jacob Stowers by shooting him." The State proceeded to trial on that indictment, and informed the jury venire that Borst had been charged with "knowingly caus[ing] the death of Jacob Stowers by shooting him." After the State rested and Borst gave his direct testimony, however, the State submitted a verdict directing instruction for second-degree murder which changed the mental element of the offense. Rather than requiring the jury to find that Borst shot Stowers with the awareness that his actions were practically certain to cause Stowers' death, the State's newly proposed instruction required the jury to find only that "it was the

11

defendant's purpose to cause serious physical injury to Jacob Stowers." Over Borst's objection, the State's revised proposal was submitted to the jury.

## C.

The question remains whether the variance between the indictment and verdict director in this case was fatal – meaning, both material and prejudicial. Materiality relates to whether Borst received adequate notice of the charges against him. The Supreme Court has found that a variance in the method by which an offense is committed between indictment and instruction "affects whether the appellant received adequate notice from the information." *State v. Lee*, 841 S.W.2d 648, 650 (Mo. 1992). Lee was charged with first-degree robbery, in violation of § 569.020.1, RSMo 1986, which stated that:

> A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime,
>
> > (1)    Causes serious physical injury to any person; or
> >
> > (2)    Is armed with a deadly weapon[.]

The Supreme Court found that a material variance existed when the information charged Lee with committing first-degree robbery while "armed with a deadly weapon," but he was convicted of first-degree robbery which "cause[d] serious physical injury" to the victim. *Lee*, 841 S.W.2d at 650. The variance here similarly involved a charge of one method of second-degree murder and the conviction of another; the variance was thus "material."

The State argues that § 565.021.3 gave Borst notice that the State may seek to convict him based on a different mental state. Section 565.021.3 provides that, "in any charge of murder in the second degree, the jury shall be instructed on . . . any and all of the subdivisions in subsection 1 of this section which are supported by the evidence and requested by one of the parties or the court." It is not at all clear that § 565.021.3 is even applicable in this context, however. Section 565.021.3

12

authorizes the submission of a second-degree murder charge under "any and all of the subdivisions in subsection 1." The two subdivisions of § 565.021.1 (subdivisions (1) and (2)) describe conventional and felony second-degree murder. The two alternative states of mind for conventional second-degree murder (knowingly causing death, *versus* a purpose to cause serious physical injury) are stated in *the same subdivision*: § 565.021.1(1). We question whether the statutory authorization to submit under "any and all of the subdivisions in subsection 1" gives the State the prerogative to submit a different mental state for conventional second-degree murder, varying from the mental state charged in the relevant charging instrument. A natural reading of § 565.021.3 is that it is intended to permit the submission of conventional second-degree murder where only felony second-degree murder is charged, or vice versa, but that it does <u>not</u> authorize the unrestricted substitution of one form of conventional second-degree murder for another whenever the State or the court requests it. This is particularly true given that "[t]he rule of lenity requires that criminal statutes be strictly construed against the State." *State v. Knox*, 604 S.W.3d 316, 320 (Mo. 2020) (citing *State v. Salazar*, 236 S.W.3d 644, 646 (Mo. 2007)).

<u>*Even if*</u> § 565.021.3 authorized the submission of either of the alternative mental states for conventional second-degree murder, this would not do away with constitutional due-process notice requirements. In *State v. Hall*, 956 S.W.2d 427 (Mo. App. E.D. 1997), this Court specifically held that § 565.021.3 does not itself satisfy due-process notice requirements. *Hall* held that a circuit court had erred by submitting felony murder to the jury when the defendant had been charged originally with only conventional first-degree murder, and had not been charged with any underlying felony. The Court explained:

> Although the statute is broadly worded, it could not do away with the constitutional right that an accused has to demand "the

nature and cause of the accusation." Article 1, section 18(a) Constitution of Missouri . . . .

. . .

. . . [T]o satisfy the constitutional right of a defendant to know the nature and cause of the accusation made, as well as to enable the defendant to make his defense, the committee [on Pattern Criminal Charges and Instructions] drafted, and the Missouri Supreme Court approved, Notes on Use 2 to MACH–CR 13.02, the pattern charge for first degree murder. That note states:

> If the state intends to submit murder in the second degree-felony under the provisions of Section 565.021.1(2), RSMo Supp. 1984, then in order "to furnish the accused with such a description of the charge against him as will enable him to make his defense," *State v. Mace*, 357 S.W.2d 923, 925 (Mo.1962), it will be necessary to add the following to this charge after the word "him" by deleting the "." and adding a comma in its place:
>
>> and defendant is further given notice that should the state submit murder in the second degree-felony under Section 565.021.1(2), RSMo, it will be based on the (immediate flight from the) (attempted) perpetration of the class __ felony of _____ under Section _____, RSMo against [name of victim].

An identical note 2 appears in MACH–CR 13.04, the pattern charge for conventional second degree murder. Further, the pattern instruction for felony murder, MACH–CR 13.06, requires the specific identification of each underlying felony. Notes on Use 2 to MACH–CR 13.06.

Returning to the facts before us, neither the original indictment nor the substitute information in lieu of indictment gave defendant any notice that the State was going to submit any felony murder, much less one based on robbery. Rather, such notice was first given at the virtual close of the State's case, some eight days after the trial commenced.

. . . Here, at the time of the amendment, no notice of any underlying felony had been given. After the amendment, he was first given notice of the underlying felony of first degree robbery.

Defendant was deprived of his right to prepare a defense to felony murder based on the underlying felony of first degree robbery. The State did not give him the notice he was constitutionally entitled to. He timely objected and his objection should have been sustained.

14

*State v. Hall*, 956 S.W.2d at 429–30 (other citations omitted); *see also State v. Hendren*, 524 S.W.3d 76, 82-83 (Mo. App. W.D. 2017) (distinguishing *Hall* and finding that the defendant had adequate notice of a possible felony-murder submission based on § 565.021.3, and because "the same charging instrument which charged Hendren with second-degree murder also charged him with first-degree burglary, the underlying felony which ultimately supported his conviction for felony murder"); *State v. Kohser*, 46 S.W.3d 108, 112 (Mo. App. S.D. 2001) (despite the authorization of § 565.021.3 to submit second-degree murder under all subdivisions of § 565.021.1, "*notice* of the possibility of such a submission could only be meaningful for an accused if the notice came before trial so the accused could prepare" a defense).

Note on Use 8 to MAI-CR4th 414.06 similarly provides that, *despite § 565.021.3*, "murder in the second degree–felony cannot be submitted as a lesser degree offense to first degree murder, or as an alternative form of murder in the second degree–conventional, unless proper notice has been given, or unless such is requested by the defendant."

Notwithstanding § 565.021.3, the State was required to give Borst adequate notice that it intended to submit an instruction that Borst committed second-degree murder because he acted with the "purpose to cause serious physical injury" to Jacob Stowers. To be adequate, notice was required before trial commenced, so that Borst would have an adequate opportunity to prepare his defense. Because Borst was deprived of such notice, the variance between the indictment and Instruction Number 9 was material.

**D.**

The variance between the manner in which second-degree murder was charged, and the manner in which it was submitted to the jury, was also prejudicial. Prejudice arises when a variance affects the defendant's ability to prepare an

adequate defense. *See Lee*, 841 S.W.2d at 650. On the other hand, a material variance is not prejudicial when the "defense at trial, if believed by the jury, was adequate to disprove the method submitted in the [indictment] and the method submitted in the instruction." *Id.* at 651.

Borst's claim of self-defense would have been adequate to disprove both methods of conventional second-degree murder. But Borst's <u>other</u> principal defense was that he did not knowingly cause Stowers' death, because he did not intend to kill Stowers, but intentionally shot him in the leg merely to wound him, and to deter Stowers from attacking Borst. Borst's "not a kill-shot" defense hinged on the specific manner in which the State had charged the *mens rea* element of second-degree murder. This defense was completely inadequate to defend against the new allegation that Borst had acted with a purpose to cause serious physical injury. Borst's testimony that he intended only to shoot Stowers in the leg would have *defeated* the indictment's allegation that he had "knowingly caused the death of Jacob Stowers." Yet that same testimony *conceded* the mental state submitted to the jury – a point which the State emphasized in closing argument. Changing the *mens rea* element of second-degree murder, after almost the entirety of the evidence had been presented, prevented Borst from preparing an adequate defense against the crime of which he was ultimately convicted.

The State argues that Borst cannot demonstrate prejudice, because he was not entitled to defend against the mental-state element of conventional second-degree murder, by arguing that he had a different culpable mental state than the one that was charged. The State relies on *State v. Tillman*, 289 S.W.3d 282 (Mo. App. W.D. 2009), in which we held that the defendant "could not have avoided [his] conviction" by arguing he intentionally killed the victim through other means than those with which he was charged, because "the cause of the victim's death is not an element of murder in the second degree." 289 S.W.3d at 294. In *Tillman*, the

16

defendant's defense did not negate an essential element of second-degree murder, either as charged or as instructed. Unlike in *Tillman*, in this case Borst's defense *did* negate the essential mental-state element as charged by the State. Notably, *Tillman* distinguished cases in which the jury submission varied from the charging instrument with respect to an *element of the offense. Id.* at 293, citing *State v. White*, 431 S.W.2d 182, 185 (Mo. 1968) (where statute prohibited stealing of another's property "either without his consent or by means of deceit," the statute established different methods of commission "which should be differentiated in pleading and proof"), and *State v. Armstrong*, 863 S.W.2d 374, 376–77 (Mo. App. E.D. 1993) (which observed that, pursuant to statute, "the crime of trespass in the first degree can be violated in one of two ways: (1) when the defendant knowingly enters a building unlawfully; or (2) when the defendant knowingly remains unlawfully in a building").

In *Tillman*, the defendant's theory of defense, which alleged an alternate cause of death, conceded all of the elements of the murder offense with which he was originally charged. Borst's defense, on the other hand, sought to *dispute* and *disprove* the essential *mens rea* element of the offense with which the State had charged him.

*      *      *      *      *

Because we find that the variance between the offense for which Borst was indicted and the offense of which he was convicted was both material and prejudicial, that variance was fatal, requiring that Borst's conviction of second-degree murder be reversed, and the case remanded for a new trial. Because Borst's conviction of second-degree murder was the basis for his conviction on the associated count of armed criminal action, that conviction is likewise reversed and remanded. *See, e.g., State v. Weems*, 840 S.W.2d 222, 228 (Mo. 1992); *State v. Henderson*, 551 S.W.3d 593, 606 (Mo. App. W.D. 2018).

17

## Conclusion

The judgment of the circuit court is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____
Alok Ahuja, Judge

All concur.