**STATE of Missouri, Respondent,**

v.

**Dennis C. BISANS, Appellant.**

**No. WD 60808.**

Missouri Court of Appeals,
Western District.

May 20, 2003.

**806**

Daniel J. Pingelton, Columbia, MO, for appellant.

Connie Sullivan, Columbia, MO, for respondent.

Before JOSEPH M. ELLIS, Chief Judge, PATRICIA BRECKENRIDGE, Judge and EDWIN H. SMITH, Judge.

JOSEPH M. ELLIS, Chief Judge.

Dennis Bisans, Jr. appeals from his conviction in the Circuit Court of Boone County of the class B misdemeanor of making a false report, § 575.080.1.[1] Appellant was sentenced to two years probation and fined five hundred dollars, four hundred of which was stayed. Viewed in the light most favorable to the verdict, the evidence reflects the following.

On March 21, 2001, a female student entered the office of Officer Steve Brown of the Columbia, Missouri, Police Department. Officer Brown's office was located at Rock Bridge High School where he was serving as the school resource officer. That student told him that another female student was outside of his office wanting to speak with him. When Officer Brown looked outside of his office, he saw K.H., a juvenile female, crying, and he noticed Appellant present in the general vicinity. K.H. told Officer Brown that another student, J.J., a sixteen-year-old male student, had confronted her outside of one of her classrooms and had "made the comment that he knew where she lived and that he was going to come by with a gun and use

it" and "that there had been remarks prior to that about wanting to rape her." K.H. told Officer Brown that Appellant had witnessed a portion of her conversation with J.J. When K.H. became more upset, Officer Brown summoned a school counselor to talk with her.

Subsequently, after J.J.'s mother was notified, Officer Brown had J.J. brought to his office and then took J.J. to the juvenile office for questioning. J.J.'s mother met Officer Brown, J.J. and the juvenile officer there. Following some questioning at the juvenile office, J.J. was taken to the Columbia Police Department's Major Crimes Unit where he submitted to a computerized voice stress analyzer—a type of "lie-detector test." J.J. passed that test. However, because there were multiple witnesses against him, J.J. was placed on in-home detention while further investigation was conducted and was suspended from school.

On the morning of March 22, 2001, Officer Brown questioned Appellant about his knowledge of the incident. Officer Brown informed Appellant that he was conducting an investigation, that the allegations being made were serious, and that Appellant might have to testify at trial one day. Appellant then told Officer Brown that he had seen J.J. talking with K.H. in the hallway and had heard J.J. tell K.H. that he knew where she lived.

Officer Brown re-interviewed Appellant later that day. During this interview, Appellant told Officer Brown that he had seen J.J. and K.H. talking in the north commons area and said that he was sitting on a bench when he heard them. He also told Officer Brown about previous problems K.H. had told him that she had with J.J.

---

1. All statutory references are to RSMo 2000 unless otherwise noted.

On March 23, 2001, Officer Brown interviewed Appellant again. During that interview, he had Appellant show him exactly where he had allegedly seen J.J. and K.H. talking and exactly where he claimed to have been at the time. Officer Brown then confronted Appellant with discrepancies between his story and K.H.'s regarding where the alleged conversation took place. Officer Brown also told Appellant that he doubted that Appellant could have seen J.J. and K.H. unless he could see through walls. Appellant then admitted that he had not seen J.J. and K.H., but said that he had heard them talking. When Officer Brown expressed further doubt that Appellant could have heard J.J. and K.H., Appellant broke down and admitted that he had not seen or heard the alleged conversation.

Subsequently, Officer Brown again questioned K.H. After he told her that Appellant had admitted lying about having heard the conversation, K.H. admitted that she had lied about the threats made by J.J.

On April 4, 2001, Appellant and his mother met Officer Brown at the booking room at the police department. Appellant again admitted that the statements he had made about hearing part of a conversation between J.J. and K.H. had been false and that he was accepting responsibility for those statements. Officer Brown then cited Appellant with making a false report and released him.

Subsequently, Appellant was charged by information in the Circuit Court of Boone County with the class B misdemeanor of making a false report. On November 7, 2001, Appellant was tried by jury and found guilty as charged. Appellant brings two points on appeal.

■ In his first point, Appellant contends that the evidence was insufficient to support his conviction. When a criminal defendant challenges the sufficiency of the evidence to support his or her conviction, our review is limited to determining "whether the evidence was sufficient for reasonable persons to have found the defendant guilty as charged beyond a reasonable doubt." *State v. May,* 71 S.W.3d 177, 183 (Mo.App. W.D.2002). In making this determination, we must accept as true all evidence and inferences favorable to the verdict and disregard all evidence and inferences to the contrary. *State v. Hawthorne,* 74 S.W.3d 826, 828 (Mo.App. W.D. 2002).

■ Appellant was convicted of making a false report under § 575.080.1. That section provides that "[a] person commits the crime of making a false report if he knowingly: (1) Gives false information to a law enforcement officer for the purpose of implicating another person in a crime ..." *§ 575.080.1.* Appellant does not challenge the sufficiency of the evidence to establish that he gave false information to a police officer; however, he does take issue with the sufficiency of the evidence with regard to his purpose to implicate another person in a crime.

The information charging Appellant alleged that:

> ... on or about the 21st day of March, 2001, ... the defendant knowingly gave false information to Steven Brown, a law enforcement officer, that J.J. had threatened K.H., **for the purpose of implicating J.J. in a crime, namely rape.**

(emphasis added). Similar language was used by the State in its opening and closing arguments. After the close of evidence and final arguments, the case was submitted to the jury with the following instructions:

> If you find and believe from the evidence beyond a reasonable doubt:

> First, that on or about the 22nd day of March, 2001, in the County of Boone, State of Missouri, the defendant gave

information to Steve Brown, a law enforcement officer, that J.J. had threatened K.H., a female juvenile, *for the purpose of implicating J.J. in the crime of rape,* and

Second, that such information was false, and

Third, that defendant acted knowingly with respect to the facts and conducted submitted in this instruction,

then you will find the defendant guilty of making a false report. . . .

(emphasis added). The jury returned its verdict finding the defendant guilty under this verdict director.

It is axiomatic that "[t]he state must prove every element of the crime charged beyond a reasonable doubt in order to support a criminal conviction." *State v. Givens,* 917 S.W.2d 215, 216–17 (Mo.App. W.D.1996). Having reviewed the record on appeal, we find that the evidence presented at trial simply does not support a guilty verdict as charged by the State in the information and submitted to the jury in the verdict directing instruction. Appellant was charged with knowingly giving Officer Brown false information with the intent to implicate J.J. in the crime of rape. Nothing in the record establishes that Appellant intended to implicate J.J. in either a real or an alleged rape through his statements to Officer Brown.[2] Neither Appellant nor K.H. ever accused J.J. of rape, either directly or by implication. Indeed, Officer Brown never even informed Appellant that K.H. told him that J.J. had

made remarks about wanting to rape her. While the record may well have supported a finding by the jury that Appellant provided false information to Officer Brown intending to corroborate K.H.'s allegations that J.J. had made threatening statements to her, Appellant was not charged with, and the jury was not instructed on, Appellant making a false report with the intent to implicate J.J. in any crime that J.J. might have been charged with in connection with those alleged threats.

Because the evidence was insufficient to establish Appellant's guilt of the crime charged in the information and in the verdict director beyond a reasonable doubt, his conviction must be reversed.[3]

All concur.

---

2. This problem with the verdict director was apparently recognized by the jury. During deliberations, the jury sent out the following note:

Instruction # 5 (1st)
"for the purpose of implicating JJ in the crime of rape"; Jury would like clarification of this statement. Does this include the threat of Rape?

The record does not reflect whether the court ever responded to this question by the jury.

3. Having determined that Appellant's conviction must be reversed for lack of a sufficient evidence, we need not address Appellant's second point on appeal which relates to the trial court's refusal to give the recantation instruction provided in MAI–CR 3d 329.30 Notes on Use 4. That instruction would have allowed the jury to find Appellant not guilty if it had found that Appellant recanted his false statement prior to the officer taking substantial action on that statement.