STATE of Missouri, Respondent,

v.

Shaval A. YOUNG, Appellant.

No. WD 63443.

Missouri Court of Appeals,
Western District.

Sept. 27, 2005.

Jeremiah W. (Jay) Nixon, Attorney General, Richard A. Starnes, Assistant Attorney General, Jefferson City, MO, for Respondent.

Jeannie Willibey, Assistant Appellate Defender, Kansas City, MO, for Appellant.

Before SMITH, C.J., and ULRICH and SMART, JJ.

EDWIN H. SMITH, Chief Judge.

Shaval A. Young appeals the judgment of his convictions for first-degree robbery, in violation of § 569.020,[1] and armed criminal action (ACA), in violation of § 571.015, following a bench trial in the Circuit Court of Jackson County. As a result of his convictions, the appellant was sentenced to concurrent prison terms of eleven years for first-degree robbery and three years for ACA in the Missouri Department of Corrections.

The appellant raises one point on appeal. He claims that the trial court erred in overruling his motion for judgment of acquittal, at the close of the State's and all the evidence, as to both offenses of which he was convicted, because the State, in violation of due process, failed to prove, as required by § 569.020 and § 571.015, an essential element of both offenses, that the knife displayed by the appellant during the course of the robbery was a "deadly weapon."

We affirm.

### Facts

On March 24, 2002, at approximately 5:00 p.m., the victim, Nathaniel Samuels, left his apartment building, located at 1108 Tracy in Kansas City, Missouri, and proceeded to walk on Tracy toward 12th Street. At the corner of 12th Street and Tracy, three young men began walking behind the victim. One of the men, the appellant, asked him for fifty cents. The victim continued walking, but after the appellant persisted in asking for the change, the victim finally gave him fifty cents. The victim then started to walk quickly away from the men, but all three men continued to follow him, and they too began to walk faster.

At the corner of 12th Street and The Paseo, the appellant jumped in front of the victim, displayed a knife and demanded the rest of the victim's money. One of the other two young men ran from the scene, while the other stayed.

The victim initially refused to give the appellant his money and tried to run away, but the appellant grabbed him, causing the victim to slip and fall in the street. The appellant then put the knife to the victim's chest and said, "Now, give me the money." The victim gave the appellant all the money he had—one hundred and twenty-five dollars, which consisted of twenty- and one-dollar bills. The appellant and his accomplice then walked down The Paseo dividing the money between them. The victim started to chase after them, but lost sight of them as they entered the T.B. Watkins apartment complex at around 12th Terrace and Highland.

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

The victim spotted several Kansas City, Missouri, police officers at 13th Street and Highland and reported to them what had just happened. He described the man with the knife as tall and thin, and wearing a blue hooded jacket. The victim got into the patrol car of Officer Charles Hill. After driving approximately fifty feet, he saw and pointed out the appellant and his accomplices. As the patrol car approached the appellant and the other young men, the appellant jumped a six-foot fence and proceeded to circle around the building, jump another fence, and climb onto the balcony of another building.

Officer Hill called for backup as he watched the appellant, who was talking with two other men on the balcony. When the second patrol car arrived, the appellant began walking back down the sidewalk toward Officer Hill's patrol car. As the appellant got about ten to fifteen feet away, Officer Hill stepped out of his patrol car and advised the appellant that he was under arrest. The two other males with the appellant, Deandre Ashley and Aaron Bean, were arrested upon being identified by the victim as the two other young men who were involved in the robbery. After their arrest, the police searched the appellant and the other two men. They found four twenty-dollar bills and two singles on the appellant, one twenty and two singles on Ashley, and five singles on Bean.

Detective Darren Reach interviewed the appellant, who waived his *Miranda* rights and agreed to speak with Reach. Initially, the appellant denied having any involvement in the robbery, but after further questioning, admitted both orally and in writing that he approached the victim, displayed a pocket knife with the blade open, took his money, and threw the knife somewhere afterwards.

On April 5, 2002, the appellant was indicted in the Circuit Court of Jackson County for the class A felony of robbery in the first degree, in violation of § 569.020, for "forcibly st[ealing] U.S. currency in the possession of Nathaniel Samuels, and in the course thereof ... was armed with a deadly weapon." The appellant was also charged with ACA, in violation of § 571.015, for committing "the felony of Robbery in the first degree ... by, with and through the use, and assistance and aid of a deadly weapon." In December of 2002, the appellant had a mental evaluation by the Division of Comprehensive Psychiatric Services at Western Missouri Mental Health Center. The report from that evaluation, dated December 18, 2002, concluded that the appellant was competent to stand trial. In pretrial proceedings on June 2, 2003, the appellant waived his right to a jury trial.

The appellant's case proceeded to a one-day bench trial before the Honorable Preston Dean on June 3, 2003. The court found the appellant guilty of first-degree robbery and ACA. On September 11, 2003, the appellant was sentenced to concurrent terms of eleven years for the first-degree robbery and three years for ACA in the Missouri Department of Corrections.

This appeal follows.

## Standard of Review

In a jury-tried case, our review of a trial court's ruling on a motion for judgment of acquittal is for a submissible case. *State v. Sensabaugh,* 9 S.W.3d 677, 679 (Mo.App.1999). However, in a judge-tried case, as here, where the trier-of-fact and the arbiter of the law are one in the same, we review to determine whether there was sufficient evidence from which the trial court could have found the defendant guilty beyond a reasonable doubt. *State v. Rehberg,* 919 S.W.2d 543, 552 (Mo. App.1995). "In making that determina-

tion, we accept as true all evidence tending to prove guilt together with all reasonable inferences that support the finding, and all contrary evidence and inferences are ignored." *Id.* "We do not weigh the evidence or decide the credibility of the witnesses," but defer to the trial court. *Id.* (*citing State v. Silvey,* 894 S.W.2d 662, 672 (Mo. banc 1995)).

## I.

■ In the appellant's sole point on appeal, he claims that the trial court erred in overruling his motion for judgment of acquittal, at the close of the State's and all the evidence, as to both offenses of which he was convicted, because the State, in violation of due process, failed to prove, as required by § 569.020 and § 571.015, an essential element of both offenses, as charged, that the knife the appellant displayed during the course of the robbery was a "deadly weapon." While we agree that the evidence was insufficient to demonstrate that the knife used by the appellant was a "deadly weapon," we disagree that the evidence was insufficient to convict the appellant of first-degree robbery and ACA.

Under § 569.020, there are four options available for charging robbery in the first degree. In that regard, § 569.020 reads, in pertinent part:

1. A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime,

(1) Causes serious physical injury to any person; or

(2) Is armed with a deadly weapon; or

(3) Uses or threatens the immediate use of a dangerous instrument against any person; or

(4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument.

The State chose option (2) in charging the appellant, alleging in Count I of the indictment that on or about March 24, 2002, the appellant, in violation of § 569.020, "forcibly stole U.S. currency in the possession of Nathaniel Samuels, and in the course thereof ... was armed with a *deadly weapon.*" (Emphasis added.) Accordingly, in charging the appellant with ACA, under § 571.015, which provides, in pertinent part: "any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action," the State alleged in Count II of the indictment that on or about March 24, 2002, the appellant, in violation of § 571.015, "committed the [ ] felony of Robbery in the first degree by, with and through the use, assistance and aid of a *deadly weapon.*" (Emphasis added.) Thus, in order to convict the appellant of the offenses of first-degree robbery and ACA, as charged, the State, as a matter of due process, had the burden of proving, beyond a reasonable doubt, the common proof element of the offenses—that the knife the appellant displayed during the commission of the robbery was a "deadly weapon." *State v. Kelly,* 43 S.W.3d 343, 350 (Mo.App.2001); *see also State v. Talkington,* 858 S.W.2d 802, 804 (Mo.App. 1993).

In this point, the appellant is claiming that the evidence was insufficient for the judge to find that the knife was a "deadly weapon," as charged as to both offenses such that the evidence was insufficient to convict as to both offenses charged. For its part, the State contends that the evidence was sufficient for the judge to find that the knife used by the appellant in the robbery was a "deadly weapon," which is

defined, for purposes of §§ 569.020 and 571.015, in § 556.061(10) as: "any firearm, loaded or unloaded, or any weapon from which a shot, readily capable of producing death or serious physical injury, may be discharged, or a switchblade knife, dagger, billy, blackjack or metal knuckles[.]" In the alternative, the State contends that even if the appellant is correct that the evidence was insufficient for the judge to find that the knife was a "deadly weapon," it was sufficient for the judge to find that it was a "dangerous instrument," which is defined, for purposes of §§ 569.020 and 571.015, in § 556.061(9) as: "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury[,]" and that this, in turn, was legally sufficient to sustain his convictions, even though the indictment charged the offenses as having been effectuated by the use of a deadly weapon. While the appellant concedes that the evidence was sufficient to convict him of first-degree robbery and ACA, based on the use of a dangerous instrument, he argues, as a matter of law, citing *State v. Bisans,* 104 S.W.3d 805, 808 (Mo.App.2003), that because he was not charged in that fashion, he could not be convicted on that basis. Because we believe that the State is correct in its contention that the evidence was sufficient to convict the appellant, based on the use of a "dangerous instrument," we discuss it alone.

In *Bisans,* the defendant was charged with and convicted of the class B misdemeanor of making a false report, under § 575.080.1(1), RSMo 2000,[2] which read at the time: "A person commits the crime of making a false report if he knowingly: (1) Gives false information to a law enforce-

ment officer for the purpose of implicating another person in a crime...." *Id.* at 807. Section 575.080.1 also provided that a person could be charged with making a false report if he knowingly:

> (2) Makes a false report to a law enforcement officer that a crime has occurred or is about to occur; or
>
> (3) Makes a false report or causes a false report to be made to a law enforcement officer, security officer, fire department or other organization, official or volunteer, which deals with emergencies involving danger to life or property that a fire or other incident calling for an emergency response has occurred.

In charging the defendant under option (1) of § 575.080.1, the State alleged that he "knowingly gave false information to Steven Brown, a law enforcement officer, that J.J. had threatened K.H., for the purpose of implicating J.J. in a crime, namely rape." *Bisans,* 104 S.W.3d at 807. The State's evidence was that the defendant had told Officer Brown, in corroboration of K.H.'s admitted false allegations that J.J. had threatened to rape her, that he had overheard J.J. make such threats to K.H. *Id.* at 806–07.

In challenging his conviction on appeal, the defendant in *Bisans* claimed, *inter alia,* that while the evidence was sufficient to show that he did give false information to Officer Brown, it was insufficient to show, as charged under § 575.080.1(1), that he did so with the "purpose of implicating another person in a crime." *Id.* at 807. In concluding that there was no evidence to support a finding that the defendant acted with the requisite "purpose of implicating J.J. in a crime, namely rape," as required to convict under § 575.080.1(1), the *Bisans* court conceded

---

**2.** Section 575.080.1(1) was amended in 2002 and now reads: "A person commits the crime of making a false report if he knowingly: (1) Gives false information to any person for the purpose of implicating another person in a crime...."

that the "record may well have supported a finding by the jury that [defendant] provided false information to Officer Brown intending to corroborate K.H.'s allegations that J.J. had made threatening statements to her." *Id.* at 808. Specifically, the court stated:

> While the record may well have supported a finding by the jury that [defendant] provided false information to Officer Brown intending to corroborate K.H.'s allegations that J.J. had made threatening statements to her, [defendant] was not charged with, and the jury was not instructed on, [defendant] making a false report with the intent to implicate J.J. in any crime that J.J. might have been charged with in connection with those alleged threats.

*Id.* Such a finding by the jury, that "[defendant] provided false information to Officer Brown intending to corroborate K.H.'s allegations that J.J. had made threatening statements to her," *id.*, would arguably have been sufficient to convict the defendant of making a false report under § 575.080.1(2), which only requires, for a violation, that the defendant make a "false report to a law enforcement officer that *a crime* has occurred or *is about to occur.*" (Emphasis added.) Because the *Bisans* court reversed the defendant's conviction, despite it appearing that there was evidence to convict him of the offense charged, but on an alternative basis of the offense not charged or submitted to the jury, but permitted by the statute under which he was charged, the appellant contends that the court was rejecting the proposition urged by the State in our case, that a variance in the proof, or "method of conviction," from the method of the offense charged was fatal to the State's case. We disagree.

Unlike our case, *Bisans* was a jury-tried case. As such, instructions to the jury as to the law were required. In *Bisans*, there was no variance between the method of the offense that was charged and the method of the offense that was submitted to the jury in those instructions. They were the same. Hence, *Bisans* stands, *inter alia*, for the proposition that even if the proof would establish the offense charged, if the conviction is based solely on a method not charged or submitted to the jury, the conviction will not stand. In other words, in a jury-tried case, a reversal is required where there is a variance between the "method of submission" and the "method of conviction." This rule makes perfect sense inasmuch as it is the jury that is the fact finder in a jury-tried case such that to allow a conviction on a method of the charged offense never submitted to the jury, would be to effectively deny the defendant of his right to a jury trial in that the jury would not be instructed on the sole method of conviction supported by the evidence.

*Bisans* stands in contrast to *State v. Lee,* 841 S.W.2d 648 (Mo. banc 1992). Unlike in *Bisans*, in which the method charged and the method submitted to the jury were identical, in *Lee,* the Missouri Supreme Court was confronted with the issue of whether a variance between the method of the offense charged in the information and the method of the offense submitted in the instructions to the jury was always prejudicial so as to mandate a reversal of the conviction, based on the method submitted in the instructions. *Lee,* 841 S.W.2d at 650. The Court said that the answer was no. *Id.* The Court held that a variance between the "method of the charged offense" and the "method of submission" only required reversal where the defendant failed to receive notice of the offense sufficient to allow him to adequately defend against the charged offense. *Id.*

The rule of *Lee* was extrapolated and applied to judge-tried cases by this court in *State v. Jones*, 892 S.W.2d 737, 739 (Mo.App.1994). In *Jones*, the defendant was charged with assaulting a police officer, in violation of § 565.083.1(1), by " 'attempt[ing] to cause physical injury to Bryan Huff, a law enforcement officer, by trying to butt Bryan Huff in the head.' " 892 S.W.2d at 739. However, in convicting the defendant, the trial court found that the defendant had violated § 565.083 in an alternative method, by "chest-butting" the officer, which violated § 565.083.1(5). *Id.* In appealing his conviction, the appellant argued to this court that he could not be charged with one offense, or with one form of an offense, and convicted of another. *Id.* Analogizing to the resolution of this same issue in jury-tried cases, this court applied the rule of *Lee* and held that he could be convicted of the alternative method of the offense charged provided that the variance between the method charged and the method of conviction did not affect the defendant's ability to adequately defend against the charged offense.

While the *Jones* court did not explain why the rule of *Lee*, rather than the rule of *Bisans* applied, the reason appears self-evident. In a judge-tried case, like *Jones* and this case, the trial court is the arbiter of the facts such that there are no jury instructions. As such, the determinable circumstance of *Bisans*, a variance between the "method of submission" and the "method of conviction," would not present itself. Rather, the controlling circumstance in play in judge-tried cases is the variance between the "method of the offense charged" and the "method of conviction," in other words, the circumstance of *Lee*, albeit in the context of a jury-tried case.

The appellant fails to demonstrate how he was prevented from adequately preparing his defense by the variance between the "method of the offense charged"— "deadly weapon," and the "method of conviction"—"dangerous instrument." He was charged with committing the robbery while using a "pocket knife" and that was the evidence that was presented at trial. His defense was that he was not the individual who displayed the pocket knife in the course of the robbery. From the record presented, we fail to see how the appellant's defense was prejudiced in any way by the fact that the method of his convictions, "dangerous instrument," varied from the method of the offenses charged, "deadly weapon."

Point denied.

## Conclusion

The judgment of the circuit court convicting the appellant of first-degree robbery, § 569.020, and ACA, § 571.015, is affirmed.

ULRICH and SMART, JJ., concur.