

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI, )
)
Respondent, )
)
vs. ) No. SC94324
)
MICHAEL E. AMICK, )
)
Appellant. )

APPEAL FROM THE CIRCUIT COURT OF OREGON COUNTY
Honorable J. Max Price, Judge

*Opinion issued June 16, 2015*

Michael Amick appeals a judgment convicting him of second-degree murder and second-degree arson. The judgment is reversed, and the case is remanded because the trial court violated section 494.485[1] by substituting a discharged alternate juror after the jury had begun its deliberations.

## Facts

Mr. Amick was charged with first-degree murder, section 565.020, and second-degree arson, section 569.050.1, for killing Leona Maxine Vaughan and setting fire to a house. A jury found Mr. Amick guilty of murder in the second degree and arson in the second degree. The court entered a judgment of

---

[1] All statutory citations are to RSMo 2000.

conviction consistent with the jury's verdict and sentenced Mr. Amick to concurrent sentences of life imprisonment for murder and seven years for arson.

After the evidence was presented, and before the jury began deliberating, the trial court excused Juror 14, who was an alternate juror. Juror 14 returned home, and the jury began deliberating.

The jury deliberated for more than five hours before the trial court excused Juror 12 from service due to health concerns. The trial court instructed Juror 14 to return to the courthouse. The court then substituted Juror 14 for Juror 12 and instructed the jury to "continue deliberations."

Prior to the substitution of Juror 14 for Juror 12, defense counsel requested a mistrial because: (1) Juror 14 could not get "caught up on what's been discussed" after five hours of deliberation; and (2) it was possible she had discussed the case with someone after being released, even though she had denied any such discussions. Defense counsel stated that calling Juror 14 back after the jury had begun deliberating would "create an enormous amount of error at this point" and that "after five and a half or six hours of deliberation, we can't just throw somebody else into the ring." Alternatively, defense counsel asked that the jury be sent home over the weekend to see whether Juror 12 would recover and be able to continue deliberating. The court overruled the motion. The jury resumed deliberations and, in less than an hour, found Mr. Amick guilty of second-degree

murder and second-degree arson. This appeal followed. This Court granted transfer and has jurisdiction. [2] Mo. Const. art. V, sec. 10.

## Preservation

The State asserts that Mr. Amick did not preserve his argument that the trial court improperly substituted Juror 14 after deliberations had begun. Mr. Amick preserved his argument by objecting to the procedure and including that claim in his motion for a new trial.

"To preserve a claim of error, counsel must object with sufficient specificity to apprise the trial court of the grounds for the objection." *State v. Stepter*, 794 S.W.2d 649, 655 (Mo. banc 1990). "Our rules for preservation of error for review are applied, not to enable the court to avoid the task of review, nor to make preservation of error difficult for the appellant, but, to enable the court— the trial court first, then the appellate court—to define the precise claim made by the defendant." *State v. Pointer*, 887 S.W.2d 652, 654 (Mo. App. 1994).

Defense counsel objected with sufficient specificity to apprise the trial court of the alleged juror substitution error. When the trial court proposed to substitute alternate Juror 14 after the jury had been deliberating for more than five hours, defense counsel requested a mistrial and specifically asserted that the

---

[2] Mr. Amick raises three points on appeal. He asserts that: (1) the trial court erred by failing to grant a mistrial when a juror had to be dismissed for health reasons after deliberations had begun; (2) the trial court plainly erred by not *sua sponte* declaring a mistrial following the prosecutor's closing argument; and (3) the trial court plainly erred by commenting on the evidence. Mr. Amick's first point is dispositive. Therefore, his second and third points will not be addressed.

3

proposed substitution would "create an enormous amount of error at this point" and that "after five and a half or six hours of deliberation, we can't just throw somebody else into the ring."  Although defense counsel did not cite section 494.485 in his objection or motion for a new trial, the objection plainly and unequivocally informed the trial court of Mr. Amick's position that the proposed juror substitution was error.  Further, trial judges are presumed to know the law and to apply it in making their decisions. *State v. Finley,* 403 S.W.3d 625, 629 (Mo. App. 2012); *see also Dycus v. Cross,* 869 S.W.2d 745, 751 (Mo. banc 1994) (trial courts are assumed to know the law).  This presumption, in addition to Mr. Amick's timely and specific objection to the precise issue of the propriety of substituting alternate Juror 14 for Juror 12 after the jury had commenced deliberations, is sufficient to preserve the issue for appeal.

## Standard of Review

Mr. Amick's argument that the juror substitution violated section 494.485 presents a legal issue subject to de novo review.  *See In re Brockmire*, 424 S.W.3d 445, 446-47 (Mo. banc 2014).

## Juror Substitution

Mr. Amick argues that the trial court erred by overruling defense counsel's objection and request for a mistrial relating to the replacement of a juror after deliberations had begun.  Specifically, Mr. Amick asserts that, by substituting Juror 14 for Juror 12 after deliberations were underway, the trial court violated

4

section 494.485 and his due process right to a fair trial. Mr. Amick's statutory argument is dispositive.

In pertinent part, section 494.485 provides:

> If in any case to be tried before a jury it appears to the court to be appropriate, the court may direct that a number of jurors in addition to the regular jury be called and impaneled to sit as alternate jurors. *Alternate jurors, in the order in which they are called, shall replace jurors who, **prior to the time the jury retires to consider its verdict**, become or are found to be unable or disqualified to perform their duties.* Alternate jurors shall be selected in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath and shall have the same functions, powers, facilities and privileges as the principal jurors. *Alternate jurors who do not replace principal jurors shall be **discharged** after the jury retires to consider its verdict.*

(Emphasis added).

The emphasized language establishes two statutory requirements central to this case. First, alternate jurors can replace another juror "prior to the time the jury retires to consider its verdict." This means that, once the jury begins to deliberate, the trial court cannot substitute one juror for another. Second, after the jury retires to consider its verdict, the alternate jurors who did not replace a principal juror are "discharged." This means that, once the jury retires for deliberation, the alternate juror is discharged and is no longer part of the jury. *See State v. Bobo*, 814 S.W.2d 353, 355 (Tenn. 1991) (court rule requiring the alternate juror to be discharged when the jury retires to consider its verdict means that the discharged alternate is no longer a member of the jury because the function of the alternate juror ceases when the jury commences deliberations).

5

Taken together, these two directives demonstrate that section 494.485 forecloses not only the option of a substitution after the jury begins to deliberate but also the possibility of a substitution because the statute requires that all alternate jurors must be discharged once the jury retires to consider its verdict. The trial court erred by substituting a discharged alternate juror after the jury had retired to consider its verdict.

The violation of section 494.485 constitutes reversible error. The right to a jury trial is a fundamental constitutional right guaranteeing every Missouri citizen the right to a unanimous jury verdict before they can be convicted of a crime. *State v. Hadley*, 815 S.W.2d 422, 425 (Mo.banc 1991). Section 494.485 regulates the jury process in a manner consistent with the constitutionally mandated unanimous verdict. In this case, the clear violation of section 494.485 deprived Mr. Amick of his statutory right to have the same twelve jurors deliberate and decide his case.[3]

The judgment is reversed, and the case is remanded.

_____
Richard B. Teitelman, Judge

All concur.

---

[3] This Court's decision in this case does not cast doubt on *State v. Johnson*, 968 S.W.2d 123, 132 (Mo. banc 1998), in which the Court held that section 494.485 does not prevent, in a bifurcated trial, an alternate juror who did not deliberate during the guilt phase of trial from deliberating during the penalty phase.