

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI,         )
                                )
      Plaintiff-Respondent,    )
                                )
vs.                             )        No. SD37229
                                )
MICHAEL MOORE,         )        **Filed:  January 11, 2024**
                                )
      Defendant-Appellant.    )

APPEAL FROM THE CIRCUIT COURT OF SCOTT COUNTY

The Honorable S. Rob Barker, Special Judge

**<u>AFFIRMED</u>**

Michael Moore appeals a Scott County Circuit Court judgment convicting him of one count of statutory rape in the first degree and one count of statutory sodomy in the first degree following a jury trial.  In three points on appeal, Moore claims the trial court erred in excluding a recording of Victim's first forensic interview ("first interview") from evidence at trial in that the recording was admissible pursuant to section 492.304 (Point I), was admissible to show Victim's demeanor during the forensic interview (Point II), and was admissible under the rule of completeness (Point III).[1]  Because Moore did not preserve his arguments under Points I and III, has not made the facial showing of

---

[1] All statutory references are to RSMo Cum. Supp. 2016, unless otherwise indicated.

manifest injustice or miscarriage of justice required to review Points I and III for plain error, and failed to demonstrate the commission of any error with respect to Point II, we affirm.

## Factual Background and Procedural History

On May 16, 2016, Victim was living with her maternal grandmother ("Grandmother"), because there "were issues going on with [her] mother."[2] Grandmother permitted Victim to stay home from school that day while Grandmother went to work. Victim was 12 years old at that time. Moore, Victim's uncle, spent the night at Grandmother's house the night before. Victim had gone back to sleep that morning and woke up to find Moore on top of her. Moore put his penis in Victim's mouth and vagina. Victim yelled for Moore to stop, but he did not do so. Victim did not tell anyone what happened that day because she did not think people would believe her and worried her family would hate her if she said anything.

The following day at school, Victim told a friend "what happened" with Moore the day before. Victim told her friend not to tell anyone because she did not want her family to find out, but her friend told someone anyway.

Children's Division received a hotline call that same day stating that Victim had told a friend that her uncle had sex with her, and she thought she might be pregnant. A Children's Division investigator and a detective with the Scott County Sheriff's Department met Victim at her school. She disclosed to them that Moore raped her. At

---

[2] We recount the evidence in the light most favorable to the judgment and provide contrary information only as necessary to supply context. *State v. Thomas*, 590 S.W.3d 441, 444 n.2 (Mo. App. S.D. 2019).

that point, the investigator and detective determined Victim needed a forensic interview and asked if Victim preferred a male or female interviewer. Victim told them she would prefer to talk to a female interviewer.

On the way to the interview, Grandmother told Victim to "lie and say it was a boy at school." Victim said she would lie because she was "worried" about Grandmother being mad at her if she refused.

When Victim got to the Child Advocacy Center, no female interviewers were available. Victim was "[n]ervous" because she "didn't want to be around men at the time." She nonetheless went through the forensic interview with a male interviewer. Victim denied that Moore raped her and, instead, said "a boy tried to take [her] shirt off at school." Victim said she made up the allegation against Moore because she was depressed and lonely. She explained she made the false allegation against Moore because she wanted to talk to someone but did not think anyone would believe her accusations about the boy at school. At that point, the detective, who spoke with Victim previously, broke protocol and interrupted the interview to take Victim to a separate room. The detective told Victim this was a "safe place[,]" and she needed "to tell the truth no matter what that was." Victim was "very nervous" during this conversation, according to the detective.

When the interview resumed, Victim still talked about a boy at school and denied that Moore raped her. During the interview, Victim joked around with the male interviewer, engaged him in conversation, and volunteered that she considered him a person she thought she could talk to if she had a problem. This first interview was not played in full for the jury at trial.

3

On May 18th, Victim went back to the Child Advocacy Center for another forensic interview (the "second interview"). A female interviewer was available this time, and Victim told her she lied during her previous interview and that Moore raped her at Grandmother's house. Victim said she lied because Grandmother told her to say a boy at school was harassing her. She told the truth this time because, in her words, she "just got tired of lying about it." This second interview was played in full for the jury at trial.

On the same day as the second interview, Victim also had a medical examination performed by a sexual assault nurse examiner. Victim had an acute, "complete transection of the hymen" and some bruising to her vagina. The injury was recent because it had not healed.

The State charged Moore with one count of statutory rape in the first degree involving a child less than 14 years old and one count of statutory sodomy in the first degree.[3] Before trial, Moore's trial counsel informed the trial court that she intended to play Victim's first interview during Moore's case in chief and provided the trial court with a copy of the interview for its review overnight. Moore's trial counsel also informed the trial court that the first forensic interviewer was available to testify at the trial.

As the trial proceeded, the trial court admitted into evidence a video recording of Victim's second interview offered by the State, and the State played it for the jury during its case in chief. Victim acknowledged during cross-examination that she said, "I wasn't raped" during the first interview and, "It wasn't actually my uncle. It was a little kid at

---

[3] The State's amended felony information also charged Moore with these same counts but sought additional imprisonment because of Moore's status as a prior offender and persistent offender under section 558.016. Moore had pled guilty to possessing a controlled substance on July 23, 2009, and possessing a methamphetamine precursor on October 6, 2010.

school who tried to take my shirt off[.]" She further admitted she "told an interviewer that day multiple times [her] uncle did not rape [her]." Moore's trial counsel played five segments of the first interview during the cross-examination of Victim to impeach her testimony.

Moore's trial counsel also cross-examined the detective who intervened during Victim's first interview. The detective admitted she interrupted the interview because Victim was "contradicting herself[.]" When asked whether the interruption violated protocol, the detective said, "It's not uncommon . . . typically we wait till the end for questions."

The trial court addressed Moore's request to play Victim's entire first interview for the jury on the second day of trial when he moved to admit the interview into evidence. The trial court watched the first interview in its entirety the night before. The State objected and argued the recording was inadmissible because it was hearsay and "no 491 hearing" was held. Moore's trial counsel maintained Moore was "seeking to show [Victim's] demeanor, to show her behavior," and "the way her behavior changed before and after [the police detective] interrupted the interview[.]" Since the State believed Victim's first interview was unreliable because she was uncomfortable having a male interviewer, Moore argued Victim's demeanor was relevant to conversely show Victim's "comfort with this interviewer and whether that's the reason she said that she hasn't been raped or whether it was truly [sic] that she hasn't been raped." Moore's trial counsel alternatively argued, "under the rule of completeness [the recording of the first interview] comes in, because it gives context to the second forensic interview[.]"

Following additional argument, the trial court asked Moore's trial counsel if she could play the video without sound or "elicit testimony about [Victim's] demeanor through the witnesses[.]" She responded that playing the video without sound was not sufficient because the "tone of [Victim's] voice and the times when she's quiet versus firm, the time when she starts to - - her voice breaks or she starts to laugh. The time when she laughs about the word vagina. I think the jury needs the full context." Moore's trial counsel continued:

> [D]emeanor is - - the jury would not have the best evidence to make that determination for themselves. They were allowed to watch the demeanor of [Victim] during the second forensic interview, and so they ought to be allowed to watch her demeanor during that first forensic interview. Just someone saying she seemed this way or she seemed that way - - and it borders on speculation as well. But to actually let them see her demeanor and judge for themselves . . . [.]

The trial court sustained the State's objection to playing the first interview but said any questions to the first forensic interviewer about Victim's demeanor were "open game." However, Moore's trial counsel told the trial court she was not going to call the first interviewer as a witness because of "trial strategy[.]" Moore's closing argument highlighted the discrepancies between Victim's two forensic interviews and emphasized how the detective's interference with the first interview was "completely out of protocol."

At the conclusion of the trial, the jury found Moore guilty of statutory rape in the first degree under Count I and statutory sodomy in the first degree under Count II. The trial court sentenced Moore to consecutive terms of 13 years' imprisonment on Count I and 10 years' imprisonment on Count II. It then denied Moore's motion for a new trial, and this appeal timely followed.

6

**Preservation of Error**

Moore Did Not Preserve Points I and III for Appeal

Before addressing the merits of Moore's points relied on, we must consider whether he preserved his arguments on appeal to determine the appropriate standard of review. For ease of analysis, we will address Moore's points out of order as appropriate.

"[T]o preserve a claim of improperly excluded evidence, 'the proponent must attempt to present the excluded evidence at trial, and if it remains excluded, make a sufficient offer of proof.'" *State v. Michaud*, 600 S.W.3d 757, 761 (Mo. banc 2019) (quoting *State v. Hunt*, 451 S.W.3d 251, 263 (Mo. banc 2014)); *State v. Valley*, 537 S.W.3d 889, 891 (Mo. App. S.D. 2018). An offer of proof must show the trial court what the evidence will be, the purpose of admitting the evidence, and each fact essential to establishing admissibility. *Michaud*, 600 S.W.3d at 761-62; *State v. Oglesby*, 621 S.W.3d 500, 519 (Mo. App. W.D. 2021). After objecting at trial, the proponent must also present the allegation of error again in a motion for a new trial to preserve the claim for appeal. *State v. Minor*, 648 S.W.3d 721, 729 (Mo. banc 2022).

Moore argues in his first point relied on that the trial court erred by excluding Victim's first interview because the recording "was admissible under section 492.304[.]" He likewise argues the trial court abused its discretion by excluding the first interview under Points II and III because the recording was admissible "not for the truth of the matter asserted but as nonverbal acts that showed [Victim's] demeanor during the interview" and "admissible under the rule of completeness[,]" respectively. The State maintains Moore preserved none of these points on appeal. We agree Moore failed to preserve his claims of error under Points I and III but disagree as to Point II.

7

Moore argued at trial that the recording of the first interview was admissible and not hearsay for two reasons: 1) The limited purpose of "show[ing] her demeanor" and "behavior" before and after the police detective interrupted the interview; and 2) the rule of completeness. Moore's motion for a new trial then stated:

> The Court erred to the prejudice of [Moore] by not allowing defense counsel to play exhibit A, the first forensic interview. Only allowing the jury to see one forensic interview when two interviews took place was prejudicial to [Moore]. Determining which interview is more credible is for the jury to decide, and they were not able to make that determination when they could not see the entire first interview. The jury would have needed to see the first interview in its entirety in order to observe the overall demeanor of the victim.

Starting with Point I, at no point during trial or in his after-trial motion did Moore cite to section 492.304. At no point did Moore indicate he was attempting to admit the first interview under any legal theory other than as evidence of demeanor or the rule of completeness. His offer of proof also did not establish that the first interview satisfied all seven foundational requirements for admission under section 492.304.[4] Though the first interviewer was available to testify, Moore did not call him to establish all foundational

---

[4] Section 492.304.1 states:

> In addition to the admissibility of a statement under the provisions of section 492.303, the visual and aural recording of a verbal or nonverbal statement of a child when under the age of fourteen who is alleged to be a victim of an offense under the provisions of chapter 565, 566 or 568 is admissible into evidence if: (1) No attorney for either party was present when the statement was made; except that, for any statement taken at a state-funded child assessment center . . . [an attorney for the State may observe the child's statement]; (2) The recording is both visual and aural and is recorded on film or videotape or by other electronic means; (3) The recording equipment was capable of making an accurate recording, the operator of the equipment was competent, and the recording is accurate and has not been altered; (4) The statement was not made in response to questioning calculated to lead the child to make a particular statement or to act in a particular way; (5) Every voice on the recording is identified; (6) The person conducting the interview of the child in the recording is present at the proceeding and available to testify or be cross-examined by either party; and (7) The defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence.

8

elements were satisfied, specifically, to confirm no attorney for either party was present during the interview, authenticate the recording as accurate and not altered, or identify each voice on the recording. Because Moore never raised the issue of the first interview's admissibility under section 492.304 to the trial court, he thereby did not preserve his claim under Point I. *State v. Thomas*, 590 S.W.3d 441, 445 (Mo. App. S.D. 2019) (claim not preserved for appeal where the defendant did not present the specific "theory of admissibility to the trial court[.]"). We "will not convict a trial court of error on an issue which was not put before it to decide." *State v. Hitchcock*, 329 S.W.3d 741, 747 (Mo. App. S.D. 2011) (quoting *State v. Herrick*, 814 S.W.2d 660, 663 (Mo. App. S.D. 1991)).

While acknowledging his failure to explicitly raise section 492.304 to the trial court, Moore argues Point I is nonetheless preserved based on *State v. Amick*, 462 S.W.3d 413 (Mo. banc 2015). The criminal defendant in *Amick* objected to the substitution of a juror after more than five hours of deliberation. *Id.* at 414. Though "counsel did not cite section 494.485 in his objection or motion for a new trial," the claim under that statute was nonetheless preserved for appeal. *Id.* at 415. The Supreme Court of Missouri reasoned that the defendant sufficiently raised his claim of error to the trial court because he "plainly and unequivocally informed the trial court of [his] position" with a "specific objection to the precise issue" as to juror substitution, and "trial judges are presumed to know the law and to apply it in making their decisions." *Id.* This reasoning does not apply in Moore's circumstances.

*Amick* addressed a criminal defendant making a "specific objection" to a trial court action. No exact statutory citation was needed at trial or in the motion for a new

9

trial because there was no question as to the issue for appeal:  the legal propriety of substituting a juror after extensive deliberation.  Moore, in contrast, is not asserting trial court error based on his objection.  He moved to admit evidence under two different theories, and he now argues three bases for admissibility on appeal.  *Amick* did not contemplate this situation.  Were we to adopt Moore's reasoning, litigants would never need to explain their reasoning for admitting any evidence before making arguments on appeal because trial judges "are presumed to know the law" on evidence.  *See id.*  This result would negate the purpose of the rules for preservation of error:  giving the trial court notice of disputed issues so it may reflect on its decision.  *See id.* (stating the purpose of the rules for preservation of error is "to enable the court—the trial court first, then the appellate court—to define the precise claim made by the defendant.") (citation omitted); *see also* **State v. Shockley**, 410 S.W.3d 179, 195 (Mo. banc 2013) ("The purpose of a motion for new trial is to allow the trial court the opportunity to reflect on its action during the trial.") (internal quotation marks and citation omitted).  Because Moore never informed the trial court he was seeking to admit the first interview under section 492.304, explicitly or otherwise, Point I is not preserved for appeal.

Moore similarly did not present his claimed error raised in Point III to the trial court for its consideration.  Though he raised the rule of completeness as a basis to admit the first interview at trial, he did not include any reference to that argument in his motion for a new trial.  Point III is therefore not preserved for appeal.  **Minor**, 648 S.W.3d at 729; **State v. Walter**, 479 S.W.3d 118, 123 (Mo. banc 2016) ("For an allegation of error to be considered preserved and to receive more than plain error review, it must be objected to during the trial *and* presented to the trial court in a motion for new trial.").

We do determine that Moore preserved his claim of error under Point II. He moved to admit the entire first interview into evidence during his case in chief at trial, arguing it was not hearsay but admissible to show Victim's demeanor to dispute the State's theory that Victim was uncomfortable having a male interviewer. Moore focused on how the jury could use Victim's demeanor before and after the police detective interrupted the interview to judge the credibility of her sexual abuse allegations. After the trial court sustained the State's objection and excluded the first interview, Moore's motion for a new trial echoed the position that the jury needed to "see the first interview in its entirety in order to observe the overall demeanor of the victim."

The State, disagreeing, claims Point II is not preserved for appeal because Moore's position at trial, that he wanted to admit the first interview to show Victim's demeanor, is contrary to the claim in the motion for a new trial, that the jury should have seen the first interview to determine "which interview is more credible[.]" The State is incorrect. Demeanor evidence is directly connected to credibility. *See State v. Griffith*, 312 S.W.3d 413, 427 (Mo. App. S.D. 2010) (finding sufficient evidence to support a conviction for molestation where "the jurors could judge Child's demeanor, see how she was questioned, and evaluate the way she responded"); *see also State v. Davis*, 877 S.W.2d 669, 674 (Mo. App. S.D. 1994) ("The fact finders—the jury—were entitled to take into account defendant's demeanor as a witness in judging his credibility."). There is no inconsistency between Moore's argument at trial and his motion for a new trial. He sought to admit the entire first interview so the jury could evaluate the credibility of Victim's allegations against the "boy at school[,]" and that would in turn impact her

11

overall credibility. To the extent the State attempts to read any contradiction into Moore's motion for a new trial, the motion's explicit reference to "the overall demeanor of the victim" was "sufficient to put the circuit court on notice of the basis for" Moore's claimed error, such that Point II is preserved for appellate review. *State v. Straughter*, 643 S.W.3d 317, 322 n.8 (Mo. banc 2022) (finding an allegation of instructional error preserved notwithstanding a criminal defendant's repeated reference to the wrong instruction number).

## Standard of Review

When a claim of error as to the trial court's exclusion of evidence is preserved, we will reverse a decision to exclude evidence "only when there is a clear abuse of discretion." *Michaud*, 600 S.W.3d at 761. "An abuse of discretion occurs only if the circuit court's ruling admitting or excluding evidence is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *State v. Salyers*, 624 S.W.3d 456, 459 (Mo. App. S.D. 2021) (quoting *State v. Loper*, 609 S.W.3d 725, 731 (Mo. banc 2020)). In this review, we recognize trial courts have broad discretion to admit or exclude evidence during a criminal trial. *Michaud*, 600 S.W.3d at 761. As our Supreme Court stated in *State v. Miller*, 372 S.W.3d 455 (Mo. banc 2012):

> A defendant in a criminal case has a constitutional right to present a complete defense. When it comes to applying evidentiary principles or rules, the erroneous exclusion of evidence in a criminal case creates a rebuttable presumption of prejudice. The state may rebut this presumption by proving that the error was harmless beyond a reasonable doubt.

*Id.* at 472 (citations omitted).

When any claim of error is not preserved for appeal, we can only review, if at all, for plain error. *State v. Perkins*, 640 S.W.3d 498, 501 (Mo. App. S.D. 2022). Plain error review is discretionary. *Id.* We may review an unpreserved claim when the claimed error "facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020) (quoting *State v. Clay*, 533 S.W.3d 710, 714 (Mo. banc 2017)). If there is no facial showing of manifest injustice or miscarriage of justice, appellate courts should decline to exercise plain error review. *Id.* at 526. The alleged error must be evident, obvious, and clear; as well as outcome determinative. *Minor*, 648 S.W.3d at 731.

**Analysis**

<u>Points I and III: Plain Error Review is Not Warranted for Moore's Unpreserved Claims of Error</u>

We decline to review Moore's Points I and III for plain error because he has failed to facially establish substantial grounds for believing manifest injustice or miscarriage of justice resulted. In anticipation of the State arguing that Point I is not preserved for appeal, Moore's briefing requests plain error review "[s]hould this Court find this error is not preserved[.]" Moore does not, however, clarify how the trial court's exclusion of the first interview resulted in manifest injustice or a miscarriage of justice. He instead makes his argument for prejudice under Point I as if it was preserved for appeal with only a passing request for plain error review. Focusing on prejudicial error alone does not address the higher standard for plain error. *See State v. Stuckley*, 573 S.W.3d 766, 768 (Mo. App. S.D. 2019) ("A plain-error claim 'places a much greater burden on a defendant than an assertion of prejudicial error.' *State v. Ralston*, 400 S.W.3d 511, 520 (Mo. App. [S.D.] 2013)."). Because Moore's briefing for Point I does

13

not attempt to present a facial case for manifest injustice or miscarriage of justice, "we decline plain-error review." **State v. Perry**, 673 S.W.3d 141, 143 (Mo. App. S.D. 2023).

Moore's briefing on Point III also does not present this Court with a facial case for plain error review. His initial brief did not request plain error review, nor did he take the opportunity to state a claim for manifest injustice or miscarriage of justice in his reply brief. Moore failed to "facially establish[] substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." **Brandolese**, 601 S.W.3d at 526 (quoting **Clay**, 533 S.W.3d at 714). We therefore decline to review Point III for plain error.

### Point II: The Trial Court Did Not Abuse Its Discretion Denying Defense Counsel's Request to Play the Entire First Forensic Interview as Evidence of Victim's Demeanor to Impeach Her Credibility

Moore contends in Point II that the trial court abused its discretion by denying defense counsel's request to play the entire recording of Victim's first interview during defendant's case in chief. As we review this claim under the abuse-of-discretion standard, we are mindful that the question is not whether we would have admitted the evidence but "whether the trial court abused its discretion in excluding the evidence." **Thomas**, 590 S.W.3d at 446 (quoting **State v. Mort**, 321 S.W.3d 471, 483 (Mo. App. S.D. 2010)). When evidence offered by a defendant in a criminal trial is erroneously excluded, the State must show the exclusion was harmless error beyond a reasonable doubt. *See* **Miller**, 372 S.W.3d at 472.

Moore argues that: 1) the trial court was required to admit the entire first recording to show Victim's demeanor for the purpose of impeaching her credibility; and 2) the exclusion of that exhibit prejudiced Moore by denying him the ability to present "highly probative evidence to counter" the State's theory.

14

We begin our analysis by noting the following well-established principle relating to impeachment on credibility grounds:

> The trial court must be permitted broad discretion in deciding the permissible scope of cross-examination, and an appellate court will not reverse a criminal conviction unless it finds that the trial court abused its discretion.[] Furthermore, the scope of cross-examination and the determination of matters of witness credibility are largely within the discretion of the trial court.

*State v. Oates*, 12 S.W.3d 307, 313 (Mo. banc 2000) (footnote omitted); *see also State v. Conley*, 699 S.W.2d 50, 51 (Mo. App. E.D. 1985).

Missouri courts have found the exclusion of evidence to be erroneous when a criminal defendant is otherwise not able to raise a defense, or pursue a particular topic of impeachment, after the challenged evidence is excluded. *See, e.g.*, *State v. Walkup*, 220 S.W.3d 748, 758 (Mo. banc 2007) (holding the exclusion of expert witness testimony regarding a defendant's state of mind was prejudicial where the defendant admitted to killing the victim and his mental state was the "main issue" at trial); *State v. Davis*, 186 S.W.3d 367, 373-74 (Mo. App. W.D. 2005) (concluding the exclusion of a child's diary was prejudicial when the defendant was not permitted to cross-examine the child about prior false allegations of rape); *State v. Gerhart*, 129 S.W.3d 893, 900 (Mo. App. W.D. 2004) (holding that the trial court erred by precluding the defendant from cross-examining the victim about denying that she had been made pregnant by defendant and from introducing testimony to prove victim had, in fact, made the statement, because this went to the core issue of her credibility); *State v. Sanders*, 126 S.W.3d 5, 24-25 (Mo. App. W.D. 2003) (finding a defendant's defense to be "for all practical purposes, eviscerated" when he could not present nude photographs or ask questions about the victim being photographed by someone else).

The case at bar is unlike any of the foregoing decisions because Moore was able to sufficiently challenge the Victim's credibility during her cross-examination. She acknowledged saying, during the first interview, that she was not raped and that, instead, a kid at school had tried to take her shirt off. In Moore's brief, he acknowledges that his trial counsels' efforts introduced "most" of Victim's substantive statements from the first interview at trial. The State argued Victim's demeanor in the first interview was impacted by Grandmother telling her to lie and by Victim's discomfort with a male interviewer. Moore's trial counsel countered the State's explanations by cross-examining Victim with five clips from the first interview where she contradicted her testimony at trial. As the State identifies, these clips provided the jury with instances of Victim's demeanor when she made allegations against someone other than Moore. Moore's trial counsel were also able to question the detective who interrupted Victim's first interview, focusing the jury's attention to the interruption being against protocol. In closing argument, Moore's trial counsel explained how the detective's actions undermined the credibility of Victim's allegations against Moore, stating:

> Instead of laying - - letting that protocol play out as it's supposed to, [the detective] decides she's going to go and interrupt the interview and, in her mind, set [Victim] straight.
>
> . . . .
>
> [Victim] denies that it happened eight times in total throughout the course of the interview. Eight times. But that wasn't good enough for [the detective], who pulls [Victim] out of the interview and interrogates her.
>
> . . . .
>
> So [Victim] got to come in a second time so her story could fit the narrative that [the detective] had already started wrapping.

By playing five different portions of the first interview, cross-examining the detective, and then synthesizing that evidence together in closing to argue the detective improperly influenced Victim's testimony, Moore was able to contextualize Victim's "nervous" demeanor for the jury.

We also note that, considering all of the impeachment accomplished during cross-examination, the trial court could rightly conclude that playing the entire first video was cumulative of what had already been elicited. Moreover, what Victim described in the first interview could not explain the objective evidence of recent sexual intercourse found during her medical examination, while what Victim described in the second interview was completely consistent with that medical evidence. The jurors certainly could consider that objective medical evidence in deciding which version of events was true.

After reviewing the record, we conclude that the trial court's ruling was not clearly against the logic of the circumstances then before the court and was not so unreasonable and arbitrary that it shocks our sense of justice and indicates a lack of careful, deliberate consideration. *See Loper*, 609 S.W.3d at 731. Accordingly, the trial court did not abuse its discretion by declining to permit defense counsel to play the entire first interview to the jury. *See, e.g.*, **State v. Hillman**, 417 S.W.3d 239, 246 (Mo. banc 2013) (trial court did not abuse its discretion in not permitting ten late-endorsed impeachment witnesses to testify because the defendant called the victim's mother, who testified that victim did not always tell the truth; "[m]erely presenting additional evidence regarding Victim's veracity would have been cumulative."); **State v. Graham**, 529 S.W.3d 363, 367 (Mo. App. E.D. 2017) (holding the exclusion of a recorded conversation was not prejudicial because the defendant "was able to give context to the State's

17

incriminating evidence through other parts of" an admitted recording); ***State v. Woods***, 357 S.W.3d 249, 254 (Mo. App. W.D. 2012) (the trial court did not err by excluding the testimony of a defense witness intended to challenge the victim's credibility; "[w]hen the testimony is intended solely for impeachment purposes, the exclusion of the testimony is not fundamentally unfair if the appellant has the opportunity to thoroughly cross-examine the witness whose testimony was to be impeached."). Because the trial court allowed defense counsel sufficient latitude for impeachment during Victim's cross-examination, the decision to preclude the playing of the first interview in its entirety was not an abuse of discretion. Point II is denied.

## Conclusion

We decline to review Points I and III for plain error. We also decide that, in light of the substantial impeachment that had already been conducted during cross-examination, the trial court did not abuse its discretion by precluding defense counsel from playing the recording of the entire first interview to the jury. The trial court's judgment is affirmed.

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

JACK A. L. GOODMAN, C.J. – CONCURS

JEFFREY W. BATES, J. – CONCURS